The Central Trust Co. of Cincinnati, Exr., Appel-
lant, *v.* Lamb, Appellant; Mitchell et al., Appellees.

(No. 6376—Decided March 20, 1944.)

*Messrs. Taft, Stettinius & Hollister,* for appellant
and appellee The Central Trust Company, executor
and trustee.

*Mr. Edward P. Moulinier* and *Mr. Graham P. Hunt,*
for appellant Imogene S. Lamb.

*Messrs. Marble & Vordenberg,* for appellees Louise
Mitchell and William N. Eickenhorst.

Hildebrant, J.   This is an appeal on questions of
law from a judgment of the Common Pleas Court of
Hamilton county in a suit seeking a declaratory judg-.
ment, with other relief, construing the will of Amy R.
Campbell as throwing upon her general estate the bur-
den of the Ohio inheritance tax on a certain *inter vivos*

gift. The executor and residuary beneficiary are both appellants.

The following facts provide the background necessary for a decision:

On February 28, 1925, testatrix, as donor, entered into the following *inter vivos* trust agreement:

'That whereas I, Amy R. Campbell, of Cincinnati, Ohio, in consideration of one dollar and other good and valuable considerations, have contemporaneously with the execution of these presents executed and delivered to William N. Eickenhorst one thousand (1000) shares of Proctor & Gamble stock, in trust, however, for the following uses and purposes:

"To hold, manage, control, invest and reinvest the same in his absolute and unqualified discretion, to pay to me, Amy R. Campbell, all of the income thereof during my said natural life, and at my death to pay to Blanche R. Sexton one-third of the income thereof for the period of her natural life, and to pay to Harriet E. Jelke one-third of the income thereof for the period of her natural life, and to retain for himself one-third of the income thereof. Upon the death of either Blanche R. Sexton or Harriet E. Jelke, the income of said one-third of said trust fund shall be divided equally between the survivors thereof, and at the death of both Blanche R. Sexton and Harriet E. Jelke the remainder of said trust fund shall pass to and vest in the said William N. Eickenhorst absolutely and in fee simple, and said trust shall be thereupon terminated.

"Provided, however, if the said William N. Eickenhorst die prior to Blanche R. Sexton and Harriet E. Jelke or either of them, I hereby appoint Charles W. Baker, Jr., as trustee to carry out the terms of this trust, having each and all the powers that I have given William N. Eickenhorst as trustee. And the said Charles W. Baker, Jr., as trustee shall pay to me the

said income thereof for the period of my natural life if I be still living at the time of the death of William N. Eickenhorst, and upon my death, or if I die prior to the death of William N. Eickenhorst, upon his death, shall pay to Blanche R. Sexton and Harriet E. Jelke, their heirs and assigns, the principal thereof share and share alike.

"Provided further that the said William N. Eickenhorst having been provided for in said trust agreement, shall receive nothing for his services as trustee herein, and said trust agreement shall be in lieu of any and all claims that he may have against said trust other than those expressly mentioned therein.

"In the event of the refusal or inability of the said William N. Eickenhorst to accept the trust hereinbefore created, or in the event of the resignation, disqualification or subsequent inability to act of the said William N. Eickenhorst I nominate and appoint as said trustee Charles W. Baker, Jr.

"In witness whereof, I have hereunto set my hand this 28th day of February, 1925.

"In presence of Clarence H. Hallman.

"Amy R. Campbell."

The conditions happened whereby the remainder consisting of the entire trust fund would pass to and vest in the defendant Eickenhorst upon the death of testatrix, which fact was known to her on February 27, 1939, on which date she executed her last will and testament, the pertinent parts of which are as follows:

"Item one: I direct that my executor hereinafter named pay all my funeral expenses and all of my just debts as soon after my decease as may be found practicable. I further direct my executor to pay as expenses of administration all inheritance, succession and estate taxes that may be levied or assessed by reason of my death. No such tax shall be charged by my

executor against the shares of the principal or income of any beneficiary of my estate."

"Item five: I give, devise and bequeath to my friend, Imogene S. Lamb, if she survives me, my residence property located at 2590 Grandin road, Cincinnati, Ohio, including the house and all land and buildings used in conjunction therewith, and all my household goods, furniture, clothing, personal effects, automobiles, books, pictures and other tangible personal property of all sorts whether located there or elsewhere."

"Item seven: I have not made my friend and business manager, William N. Eickenhorst, a beneficiary under this, my will, because I have, during my lifetime, made ample provision for him.

"Item eight: I give, devise and bequeath all of the residue of my estate of every kind and description to my friend Imogene S. Lamb, to be hers absolutely and in fee simple.

"Item nine: I nominate and appoint The Central Trust Company of Cincinnati (Ohio) as executor of this my last will and testament, and direct that no bond be required of The Central Trust Company as such executor. I direct that my executor be not required to file any inventory or appraisement of my estate that may be lawfully dispensed with, or make any sale thereof as may be required by law. I give my executor full power to settle and compound any and all claims that may be due to or from me. To enable my executor to pay my legacies, debts, funeral expenses, the expenses of administration of my estate, and all estate, inheritance and succession taxes that may be assessed by reason of my death, and to execute the provisions of this my will, and of any codicils thereto that I may execute, I authorize and empower my said executor to sell any part or parts of my estate, real or per-

sonal, not hereinabove specifically bequeathed or devised, at public or private sale, at such times and places, for such prices, and on such terms of payment, as it may deem expedient, and to execute and deliver all deeds or other instruments of writing necessary to carry out any such sale, without being required to apply to any court for authority so to do. Purchasers from my executor shall not be concerned to inquire as to the occasion for the sale nor to see to the application of the purchase money, and written receipts signed by my executor shall be good and sufficient discharges for the sums therein stated to have been received.''

The validity of the will was sustained by jury verdict in an action heretofore concluded to set the will aside. Extrinsic evidence permitted by the trial court reveals that testatrix, a woman of large affairs, died on September 10, 1941, in her eighty-third year; that defendant Eickenhorst for some thirty-odd years enjoyed a confidential relationship with her, first, as employee, then as friend and manager; and that the residuary legatee, as companion, nurse and friend, also enjoyed a confidential relationship with testatrix during the latter years of her life. Neither defendant Eickenhorst nor the residuary legatee were related by blood to testatrix. There was also introduced in evidence, over objection, a copy of a former will of testatrix, dated July 19, 1938, containing the following items:

''Item one: I direct that my executor or executrix hereinafter named pay my funeral expenses and all of my just debts. I further direct my executor or executrix to pay as expenses of administration of my estate all inheritance, succession and estate taxes that may be levied or assessed by reason of my death. No such tax shall be charged by my executor or executrix against the bequest or devise of any non-residuary

beneficiary of this will, nor shall any such beneficiary be required to pay to my executor or executrix the amount of any such tax before receiving all or any part of his or her bequest or devise, but all such taxes shall be paid out of the residue of my estate."

"Item nine: I give, devise and bequeath all the residue of my estate, both real and personal, of every sort and wheresoever situate, existing at my death, in equal shares to my friends, Imogene S. Lamb, hereinabove referred to, and William N. Eickenhorst who now conducts the Campbell Commercial School at 31 East Fourth street, Cincinnati, Ohio. Should either of them not survive me, I give, devise and bequeath said residue to the one of them who does survive me. Should neither of them survive me, I give, devise and bequeath said residue to my heirs at law."

Appellants argue only two assignments of error, the first being that the court erred in admitting the copy of the former will.

To enable the court to place itself in the position of the testatrix at the time of making her will and assist it in correctly interpreting the language claimed by appellants to be subject to a latent ambiguity, to wit, just what is comprehended within the words "my estate," the court finds such evidence was admissible. 41 Ohio Jurisprudence, 634, Section 503 reads:

"It is not uncommon for the courts to call for the original draft of a will, or for a former will, from which the will in question was made, and to inspect them. A Common Pleas Court of Ohio has held admissible a previous will from which the one in question was copied."

See, also, *Taylor et al., Exrs.,* v. *Taylor,* 7 N. P. (N. S.), 297, 19 O. D., 829; 41 Ohio Jurisprudence, 612, Section 480.

We come now to the second and principal issue of the

case, which may be simply stated thus: Where does the burden of the Ohio inheritance tax rest, upon the trust estate by virtue of the law, or upon the general estate by virtue of the expressed intention of the testatrix contained in the language of her will?

The applicable sections of the Ohio General Code are:

Section 5331, General Code, relating to inheritance taxes, contains the definition of terms. In that section is found the following:

"* * * 1. The words 'estate' and 'property' include everything capable of ownership, or any interest therein or income therefrom, whether tangible or intangible, and, except as to real estate, whether within or without this state, which passes to any one person, institution or corporation, from any one person whether by a single succession or not.

"2. 'Succession' means the passing of property in possession or enjoyment, present or future. * * *

"4. 'Decedent' includes a testator, intestate, grantor, assignor, vendor or donor. * * *"

Section 5332, General Code, likewise relating to inheritance taxes, provides in part:

"A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases: * * *

"3. When the succession is to property from a resident, or to property within this state from a nonresident, by deed, grant, sale, assignment or gift, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property:

"(a) In contemplation of the death of the grantor, vendor, assignor, or donor, or

"(b) Intended to take effect in possession or enjoyment at or after such death."

Section 5336, General Code, provides in part as follows:

"Such taxes shall be and remain a lien upon the property passing until paid, and the successor and the executors or administrators of the general estate of the decedent, and the trustees of such property shall be personally liable for all such taxes, with interest as hereinafter provided, until they shall have been paid as hereinafter directed.

"Such an administrator, executor or trustee, having in charge or in trust for distribution any property the succession to which is subject to such taxes, shall deduct the taxes therefrom, or collect the same from the person entitled thereto. He shall not deliver, or be compelled to deliver, any specific legacy or property, the succession to which is subject to said taxes, to any person, until he shall have collected the taxes thereon. He may sell so much of the estate of the decedent as will enable him to pay said taxes in like manner as he would be empowered to do for the payment of the debts of the decedent."

It is apparent from the above-quoted sections that that law casts the tax burden upon the beneficiary of the trust, as the Probate Court found in assessing the tax against the trustee, unless testatrix, as she had the right to do, by appropriate language in her will, shifted that burden elsewhere, as found by the Common Pleas Court. Did the will then direct the tax burden otherwise than the law?

To restate here what has been variously iterated and reiterated in many Ohio cases, the cardinal rule of interpretation of a will is to ascertain and give effect to the intention of the testator. And to that end all rules of construction are to be followed only as they assist

in determining that intention, and no rule, however sanctioned by usage is to be applied to thwart that intention. That intention is to be ascertained from the wording of the will as applied to the subject matter and considered in the light of surrounding circumstances known to the testator at the time of the execution of the will. The intention is to be gleaned from the whole will, and, except for the inclusion of the syllabus of *Townsend's Exrs.* v. *Townsend,* 25 Ohio St., 477, set forth in appellants' brief, which the court deems pertinent here, no further general statement of the objective of decision of this case will be indulged. The syllabus is as follows:

"1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

"2. Such intention must be ascertained from the words contained in the will.

"3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear from the context that they were used by the testator in some secondary sense.

"4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.

"5. If a dispute arises as to the identity of any person or thing named in the will, extrinsic facts may be resorted to, in so far as they can be made ancillary to the right interpretation of the testator's words, but for no other purpose."

Testatrix here said in her will:

"Item I. * * * I further direct my executor to pay as expenses of administration all inheritance, succession and estate taxes that may be levied or assessed by reason of my death. * * *."

308

Appellants concede that such sentence, standing alone, means testatrix intended to shift the statutory tax burden. They claim the third sentence of item I, to wit, "No such tax shall be charged by my executor against the shares of the principal or income of any beneficiary of my estate," not only casts doubt upon that meaning, but, by use of the words "my estate," an intention to charge only that part of her estate, upon which her will operates to direct devolution, appears, and the ordinary, plain, all-inclusive, clear statement contained in sentence two, for that reason, does not mean what it concededly says. They contend that the words "my estate" in effect have acquired a meaning in law limiting their application to the testamentary estate only and thus a rule of construction of wills, in seeking to fix the burden of so-called death taxes, is born. Appellants cite numerous cases from the states of Connecticut, Massachusetts, Maryland, New Jersey, and New York, claiming that such rule is a new one to be invoked in Ohio. The court has examined all of the cited cases including *Sherman et al., Exrs., v. Moore*, 89 Conn., 190, 93 A., 241; *United States Trust Co. of New York v. Sears*, 29 F. Supp., 643; *Loring et al., Exrs., v. Gardner et al., Trustees*, 221 Mass., 571, 109 N. E., 635; *Farmers' Loan & Trust Co., Trustee, v. Winthrop, Jr., Exr.* (1924), 238 N. Y., 488, 144 N. E., 769; *In re Clark's Estate*, 7 N. Y. Supp. (2d), 176; *In re Kaufman's Estate*, 10 N. Y. Supp. (2d), 616; *Chase National Bank of City of New York v. Tomagno*, 14 N. Y. Supp. (2d), 759; *In re Aldrich's Will*, 18 N. Y. Supp. (2d), 420, and with the trial court, finds that by reason of the language used, or the extrinsic evidence involved, or the laws of the various states, or the combination of two or more of these reasons, they are insufficient to control or direct the decision of this case.

The court finds no fault with the rule referred to in

the cited cases, which is substantially that as the practical effect of making a legacy or devise, or other gift, tax free, is to increase the gift and shift the burden of taxation to other or residuary legatees, the intent of the testator to do so must be clear and will not be drawn from vague or uncertain language. But, after exploring the field, the court finds itself back again with the fundamental problem of ascertaining the testamentary intent from the language used.

Appellants contend that to exonerate the trust estate from the tax is in effect making defendant a beneficiary under the will, contrary to item seven. Item seven appears to the court to be merely an explanation for posthumous inspection, wherein testatrix yielded to the human desire to prevent uninformed comment on the part of those knowing of her confidential relationship with defendant during lifetime, and it appears that the word "beneficiary" is used in the sense of a named beneficiary of a specific legacy or devise.

Bearing in mind that defendant here was named as a beneficiary in the former will of July 19, 1938, the significance to be gained by a comparison of the two wills tends to substantiate the claim that the language of the last will was used designedly to accomplish a shift of the tax burden on the succession to the trust estate, from that estate to the general or testamentary estate.

If, as appellants indicate, it is quite likely that a general intent to treat defendant and the residuary legatee equally, existed, the shift of the tax burden would more nearly accomplish this in view of the specific devise of real estate and personal property to the residuary legatee.

Testatrix plainly said that not part, but "all inheritance, succession and estate taxes that may be levied or assessed by reason of my death" shall be paid by

her executor as expenses of administration. She said: "No such tax shall be charged by my executor against the shares of the principal or income of" not just certain ones, but "any beneficiary of my estate." Obviously, she had in mind her taxable estate, the technical words of inheritance, succession, estate taxes were used, and this court is struck with their use as being skillful and by particular design. By reaching out to indulge a technical rather than ordinary construction of the words "my estate" to upset the plain, all-inclusive language used, would, it seems, defeat rather than ascertain the meaning of the language used, taken in connection with the will as a whole and the surrounding circumstances at the time of the execution of the will. The law presumes that the testatrix knew the succession to the trust corpus was taxable when she made her will, and the words "my estate" being subject to a latent ambiguity and less clear, will not be construed to change the clear statement of intent that all taxes arising by reason of her death were to be paid by her executor as expenses of administration.

The judgment of the trial court is, therefore, affirmed.

*Judgment affirmed.*

Ross, P. J., and Matthews, J., concur.