845 P.2d 494

**In the Matter of the ESTATE OF Jeanne G. TOVREA, deceased, Edward Tovrea, Jr., Georgia Loy Tovrea and Priscilla Tovrea Holdcrafts, Creditors, Plaintiffs–Appellants,**

v.

**Deborah Ann NOLAN and Sandra G. Elder, Co–Personal Representatives, Defendants–Appellees.**

**No. 1 CA–CV 90–669.**

Court of Appeals of Arizona, Division 1, Department A.

July 21, 1992.

Reconsideration Denied Sept. 8, 1992.

Review Denied Feb. 17, 1993.

Thayer & Thayer, P.C. by Ted J. Thayer, Teresa S. Thayer, Alicia M. Lawler, Phoenix, for plaintiffs-appellants.

Jennings, Strouss & Salmon by Glenn J. Carter, James M. Ackerman, John R. Becker, Phoenix, for defendants-appellees.

## OPINION

GERBER, Judge.

This appeal involves the interpretation of the tax clause in the will of Jeanne Gunter Tovrea ("decedent"). For reasons which follow, we affirm the trial court's grant of summary judgment in favor of the appellees, decedent's personal representatives.

## FACTS AND PROCEDURE

At the time of her death decedent was the widow of Edward A. Tovrea. They had no children together. Decedent had a child from a previous marriage, appellee Deborah Ann Nolan ("Nolan"). Edward Tovrea had three children from a prior marriage: appellants Edward A. Tovrea, Jr., Georgia Loy Tovrea and Priscilla Tovrea Holdcrafts.

Edward Tovrea's will created a qualified terminable interest property ("QTIP") trust with all income to be paid to decedent during her lifetime. Upon her death, the principal of the QTIP trust, approximately $4 million, was to be distributed to appellants. Prior to decedent's death, appellants commenced a suit against her for breach of fiduciary duty as trustee of the QTIP trust.

On February 13, 1987, decedent designated Nolan as the sole beneficiary of her $2.7 million life insurance policy. She executed her will on November 24, 1987. She died on April 1, 1988.

Decedent's taxable estate totaled approximately $8.8 million. Her taxable estate included her probate estate of approximately $2.1 million in property and securities, and her nonprobate estate of the $2.7 million life insurance policy and the QTIP funds. Taxes on the probate estate and life insurance proceeds totaled approximately $2 million.

Article Three of her will, which is at issue here, states:

My personal representatives shall pay from the residue of my estate all expenses of my last illness and funeral, costs of administration, costs of safeguarding and delivering devises, and other proper charges against my estate. *My personal representatives shall also pay from the residue of my estate all estate and inheritance taxes assessed by reason of my death other than those related to qualified terminable interest property contained therein.* Interest and penalties relating to any tax shall be paid and charged in the same manner as the tax. (Emphasis added.)

Nolan and Sandra G. Elder, decedent's sister, were appointed co-personal representatives. In their accounting ("first account"), the personal representatives stated that the estate assets were insufficient to pay the estate taxes and interest.

Appellants objected to the first account. As creditors of the estate, appellants maintained that the intent of the co-personal representatives was to defraud appellants by depleting the estate of all assets and making it judgment-proof. Appellants specifically argued that the court should require Nolan to be personally responsible for payment of the estate taxes on the $2.7 million insurance proceeds she received.

Appellees then filed a motion for partial summary judgment in which they sought an order relieving them from any obligation to seek contribution from Nolan for estate taxes on the life insurance policy and ordering that any monies advanced by appellees to pay estate taxes would create an estate obligation with the same priority as the taxes themselves. They argued that Article Three expressly directed the personal representatives to pay "all estate and inheritance taxes" from the residue of decedent's estate and that the taxes on the life insurance proceeds assessed as the result of her death were to be paid from the residue of the estate.

Appellants also filed a motion for partial summary judgment seeking an order to compel appellees to pursue a claim against

Nolan for her pro rata share of estate taxes attributable to the life insurance proceeds. They argued that the tax provision in decedent's will was not specific enough to indicate decedent's intent for the taxes on the insurance policy to be paid out of the estate residue. Appellants maintained that decedent could not have intended that her estate pay the taxes on nonprobate assets because such a plan would defeat her specific bequests in the will.

The probate court granted appellees' motion for partial summary judgment and denied appellants' motion. Following denial of their motion to vacate the judgment, appellants filed this appeal. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. section 12–2101(J) (1991).

## DISCUSSION

■ The issue on appeal is whether the tax clause in decedent's will applies to the payment of estate taxes generated by the $2.7 million life insurance policy. Federal law provides for the apportionment of estate taxes arising from the proceeds of life insurance policies as follows:

*Unless the decedent directs otherwise in his will,* if any part of the gross estate on which tax has been paid consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the taxable estate.

26 U.S.C. § 2206. (Emphasis added.) Accordingly, federal tax on life insurance proceeds must be paid out of those policy proceeds unless "otherwise directed" by the decedent.[1]

■ To determine whether the testator has "otherwise" directed, the language of the will controls. *Brewer v. Peterson,* 9 Ariz.App. 455, 460, 453 P.2d 966, 971

(1969); *In re Armstrong's Estate,* 56 Cal.2d 796, 17 Cal.Rptr. 138, 366 P.2d 490 (1961); *In re Estate of Wheeler,* 65 Ill. App.2d 201, 213 N.E.2d 35 (1965). The direction to shift the tax burden must be in clear and unambiguous language so as to avoid a contrary interpretation. *In re Kelly's Estate,* 41 Colo.App. 316, 584 P.2d 640, 641 (1978); *Wendland v. Washburn University,* 8 Kan.App.2d 778, 667 P.2d 915, 917 (1983); *Central Trust Co. of Cincinnati v. Lamb,* 74 Ohio App. 299, 58 N.E.2d 785, 788–89 (1944); *In re Estate of Huffaker,* 641 P.2d 120, 121 (Utah 1982). A few simple words may suffice provided that the language sufficiently indicates an intention against apportionment. *In re Ogburn's Estate,* 406 P.2d 655, 657–58 (Wyo.1965); *see also* Maurice T. Brunner, Annotation, *Construction and Effect of Will Provisions Expressly Relating to the Burden of Estate or Inheritance Taxes,* 69 A.L.R.3d 122, 144 (1976). Any ambiguity in the language regarding payment of taxes is resolved in favor of apportionment. *In re Estate of Carley,* 90 Cal.App.3d 582, 153 Cal.Rptr. 528, 531 (1979); *In re Pergament's Estate,* 29 Misc.2d 334, 218 N.Y.S.2d 831, 834 (Surrogate Ct.1961), *aff'd,* 19 A.D.2d 945, 245 N.Y.S.2d 312 (1963).

■ The operative language in decedent's will provided that "[m]y personal representatives shall also pay from the residue of my estate all estate and inheritance taxes assessed by reason of my death other than those related to qualified terminable interest property contained therein." Two previous Arizona cases, *Brewer v. Peterson,* 9 Ariz.App. 455, 453 P.2d 966 (1969), and *In re Hayes,* 129 Ariz. 174, 629 P.2d 1010 (App.1981), involve wills with similar language. Although the language in decedent's will differs from the language in the *Brewer* and *Hayes* wills, which specifically provided that taxes attributable to nonprobate property or property passing outside

---

1. Apportionment of federal taxes on life insurance proceeds is governed exclusively by 26 U.S.C. § 2206, and states may not apply contrary state laws. *McAleer v. Jernigan,* 804 F.2d 1231, 1233 (11th Cir.1986). This appeal involves both federal and state estate taxes. In Arizona, the apportionment rule of § 2206 is also applied to state estate taxes unless the testator directs otherwise. *See Brewer v. Peterson,* 9 Ariz.App. 455, 459, 453 P.2d 966, 970 (1969). Thus, our decision in this appeal applies to both Arizona and federal estate taxes.

the will would be paid out of the residue of the estate, these cases remain instructive. The will in *Brewer* stated:

I further direct that all estate, transfer, succession, inheritance, legacy, gift and similar taxes upon, or with respect to, any property required to be included in my gross estate for tax purposes under the provisions of any tax law, *and whether or not passing hereunder or upon or with respect to any devises or bequests made herein*, or upon or with respect to any such property, shall be paid out of my residuary estate hereunder as an expense in the settlement of my estate.

9 Ariz.App. at 458–59, 453 P.2d at 969–70. (Emphasis added.) *Brewer* held that the testator clearly directed that estate taxes on a taxable gift made shortly before her death be charged to the residuary estate because the court found the direction clear with respect to "any property ..." *Id.* at 459–60, 453 P.2d at 970–71.

The will in *Hayes* stated:

I direct that all inheritance, estate or other death taxes that may by reason of my death be attributable to my probate estate or any portion of it, or to any property or transfers of property outside my probate estate, shall be paid by my Personal Representative out of the residue of my estate, ... and *shall not be charged against or collected from any beneficiary of my probate estate, or from any transferee or beneficiary of any property outside my probate estate, ...*

129 Ariz. at 176 n. 3, 629 P.2d at 1012 n. 3. (Emphasis added.) The *Hayes* court noted that the will directed the personal representative to pay all inheritance, estate and other death taxes out of the residue of the estate and not to collect any such taxes from any beneficiary of the probate estate or from any transferee or beneficiary outside the probate estate. *Id.* at 176, 629 P.2d at 1012.

The will at issue here does not contain language specifically providing for payment of taxes attributable to nonprobate assets from the estate residue as in *Brewer*

and *Hayes*. We must decide if, in the absence of such language, the tax burden must remain with the beneficiary of the proceeds.

Appellants argue that, read as a whole, decedent's will does not indicate an intent against apportionment of taxes because it does not specifically release Nolan from paying the taxes on the policy but contains specific bequests that would abate if Nolan did not pay her pro rata share of estate taxes. They further maintain that the fact that the will does not mention the $2.7 million policy or Nolan as beneficiary of the policy indicates that decedent did not intend to relieve Nolan of her estate tax obligation. Based on *Brewer* and *Hayes*, appellants assert that the language of the tax clause does not constitute a clear direction against apportionment because it does not specifically provide for payment of taxes on nonprobate assets from the residue of the estate.

To the contrary, we find that the language of the tax clause unambiguously directs the personal representatives to pay from the residuary estate the taxes attributable to nonprobate assets such as the life insurance policy. The clause directs that "all" estate and inheritance taxes are to be paid from the residue. In interpreting tax clauses, courts interpret the word "all" to prohibit any apportionment of the death taxes on every form of gift or transfer contained in the gross taxable estate whether passing under the will or outside the will. 69 A.L.R.3d at 270–71. For example, in *In re Greenwald's Estate*, 186 Misc. 654, 53 N.Y.S.2d 937 (Surrogate Ct. 1945), where the testator directed "that all Inheritance, Transfer, Estate and Succession taxes be paid out of my residuary estate," the court stated:

The word "all" means exactly what it imports. It is defined in Webster's New International Dictionary, 2d Ed., as "the whole number". A more comprehensive word cannot be found in the English language. 3 Words and Phrases, Perm.Ed. Standing by itself the word means all and nothing less than all. Since in the pending proceeding it is un-

restricted by any other word or words, it constitutes a broad mandate by the testatrix to include the taxes upon every form of gift or transfer contained in the gross taxable estate, whether passing under the will or outside the will. Any apportionment of taxes was prohibited by her. 53 N.Y.S.2d at 939. (Emphasis added.) The court in *In re Estate of Bell v. First Nat'l Bank & Trust of Wyoming*, 764 P.2d 689, 692 (Wyo.1988), approved the holding of *Succession of Jones*, 172 So.2d 312, 316 (La.App.1965), writ of review refused, 247 La. 718, 174 So.2d 131 (La.1965), that "[w]ith reference to tax clauses in wills, courts are bound to regard all words in their usual and most known signification, according to their natural and reasonable meaning."

Similarly, in *In re Halle's Will*, 270 A.D. 619, 61 N.Y.S.2d 694, 695–96 (1946), where the will provided "I direct that all inheritance, estate, transfer and succession taxes be paid out of my residuary estate," the court stated that the direction for payment of "all" taxes was as comprehensive as possible and that the intention of the testator to include taxes on a bank account was not made uncertain merely because of the will's broad language.

We likewise find that the use of the word "all" in decedent's will indicates her intent to include in the tax provision every form of gift or transfer in her taxable estate regardless of whether the property passed under or outside her will.

■ Furthermore, the phrase "assessed by reason of my death" indicates that decedent anticipated that the tax provision would cover proceeds from her life insurance policy. Taxes assessed by reason of death include taxes on life insurance proceeds. Courts have held that such language shows the testator's intent to apply the tax provision to nonprobate assets. In *In re Wheeler's Will*, 19 Misc.2d 335, 186 N.Y.S.2d 134, 136 (Surrogate Ct.1959), the testator directed that "all estate, inheritance or other taxes levied as the result of my decease [sic] be paid by and out of my estate" and that "no one who receives any assets as the result of my decease [sic]

shall be called upon to contribute toward the payment of such taxes." The court concluded that the testator exonerated the recipients of non-testamentary assets from payment of estate taxes imposed on those assets. 186 N.Y.S.2d at 137. *See also In re Estate of Wheeler*, 65 Ill.App.2d 201, 213 N.E.2d 35 (1965) (direction to pay out of principal of estate all taxes assessed in any way by reason of testator's death included taxes on an inter vivos trust). Similarly, in *Central Trust Co. of Cincinnati v. Lamb*, 74 Ohio App. 299, 58 N.E.2d 785 (1944), the testator's statement that "all taxes" arising by reason of her death were to be paid by her executor as expenses of administration was held to be a clear statement of intent that included estate taxes on a trust.

■ Finally, the most compelling argument for this interpretation of the clause is that decedent directed that her personal representatives pay from her residuary estate all taxes "other than those related to qualified terminable interest property contained therein." This direction indicates that decedent knew that she owned nonprobate property on which taxes would be due. It also demonstrates that decedent believed that her provision for taxes to be paid from the estate residue would cover nonprobate assets unless she exempted such an asset from that provision. This exception for the nonprobate QTIP trust would be unnecessary if decedent thought that her direction regarding payment of taxes did not include taxes on nonprobate assets such as the QTIP trust and the insurance policy. Under the rule of *expressio unius est exclusio alterius* ("expressio unius") the statement of one exception implicitly denies the existence of other unstated exceptions. *See Lewis v. Industrial Comm'n*, 93 Ariz. 324, 326, 380 P.2d 782, 783 (1963); *see also* BLACK's LAW DICTIONARY 521 (5th ed. 1979) ("When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred.")

Although the maxim *expressio unius* is generally applied to statutory construction, other jurisdictions have applied it to interpretation of wills. *Kirsheman v. Paulin*,

155 Ohio St. 137, 98 N.E.2d 26, 31–32 (1951); *Matthews v. Nelson,* 303 S.C. 489, 401 S.E.2d 669 (1991); *Ellis v. First Nat'l Bank in Dallas,* 311 S.W.2d 916, 921 (Tex. App.1958). *Ellis* stated that "[b]y expressly providing for one gift—and only one—... the testator in effect denied to the Trustee Bank the general power to make other gifts." 311 S.W.2d at 921. *Matthews* stated that "[t]he maxim *expressio unius est exclusio alterius* also aids our interpretation of the will. By expressly mentioning that Nelson was to receive one-third of the account funds, the negative implication is that he is not to receive more." 401 S.E.2d at 671. (Footnote omitted and emphasis added.) Thus, decedent's specific exception of one nonprobate asset, the QTIP trust, shows that she intended for other nonprobate assets, such as the insurance policy, to be covered by her tax provision.

 Appellants contend that such an interpretation is improper because it would alter decedent's estate plan for specific bequests to individuals. Yet the fact is that a tax allocation clause potentially impacts all specific bequests. We will not disregard the clear language of the tax clause to protect those bequests. At the time of executing a will, the testator does not know the amount of assets which will be left at death or liabilities to be paid. Therefore, a clear direction to pay taxes out of the estate cannot be defeated merely by showing an adverse impact on specific bequests.

Appellants argue that to give effect to the tax clause would do violence to the testator's intent. But that argument is unavailing because we only reach the question of intent when the tax clause is ambiguous, which we find it not to be. *See Pleska v. Zakutansky,* 459 N.E.2d 745 (Ind.App.1984) (when the language of a will is ambiguous, then the court looks to other provisions of the will to determine testator's intent); *cf. In re Estate of Kirby,* 498 N.E.2d 64, 65–66 (Ind.App.1986) (the court will look to the plain language of the will to interpret unambiguous clause). The cases which discuss defeating specific bequests

via a tax clause are inapposite because we perceive no such ambiguity here.

 Appellants also argue that decedent could have made her tax clause more specific by clearly stating that her probate estate rather than Nolan was to pay the taxes on the life insurance policy. Doubtless this assertion is true. They propose that she should have written, "My personal representative shall also pay from the residue of my estate all estate and inheritance taxes assessed by reason of my death, including the taxes on the $2.7 million life insurance policy of which DEBORAH ANN NOLAN is the beneficiary." While in some circumstances, and particularly with hindsight, such specific language would make interpretation easier, we do not believe that such labored specificity is required. Because of the uncertainty of the timing of death, wills need to be drafted with enough generality to cover the multitude of unforeseeable financial situations that will exist upon the death of the testator. The use of broad language does not necessarily make the intention of the testator uncertain. *See Halle's Will,* 61 N.Y.S.2d at 696. The prospect that decedent could have written her tax provision in a still more specific way does not defeat the specific language she used.

Appellants also argue that the will provision is ambiguous and therefore extrinsic evidence should be considered to determine her intent regarding payment of taxes. As noted above, we find that the operative clause is unambiguous, and thus there is no need to consider such extrinsic evidence. *See In re Strobel,* 149 Ariz. 213, 219, 717 P.2d 892, 898 (1986); *In re Smith's Estate,* 119 Ariz. 293, 580 P.2d 754 (App.1978).

## CONCLUSION

We conclude that the tax clause in decedent's will unambiguously directed that the estate taxes generated by the $2.7 million life insurance policy were to be paid from the residue of the estate. We accordingly affirm the trial court's grant of summary judgment in favor of the co-personal repre-

sentatives and the denial of appellants' motion for partial summary judgment.

CONTRERAS, P.J., and McGREGOR, J., concur.