983 P.2d 759

**CITY OF TUCSON, a municipal corporation, Plaintiff/Appellant/Cross-Appellee,**

v.

**WHITECO METROCOM, INC., Defendant/Appellee/Cross-Appellant.**

**No. 2 CA–CV 98–0064.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 23, 1999.

Redesignated as Opinion April 14, 1999.

Review Denied Nov. 29, 1999.

See also 997 F.2d 604.

Thomas J. Berning, City Attorney By Frank William Kern III and Laura Brynwood, Tucson, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Lewis and Roca, LLP By John N. Iurino and Mary Beth Savel, Tucson, Attorneys for Defendant/Appellee/Cross–Appellant.

## OPINION

HOWARD, Judge.

¶1 Appellant/cross-appellee City of Tucson challenges those portions of the trial court's judgment determining that the City's "vacant lot" ordinance, Tucson Code § 3–59(a)(6)(b), was unenforceable against appellee/cross-appellant Whiteco Metrocom, and that four of Whiteco's billboards were not subject to removal. Whiteco cross-appeals the portion of the trial court's judgment ordering it to remove eleven of its billboards. We affirm in part, and vacate and remand in part.

¶2 In this action for equitable relief, the City sued Whiteco, seeking the removal of several billboards, claiming the billboards violated the City's vacant lot ordinance. The City also claimed some of the billboards were impermissibly expanded, relocated, or changed, and thereby lost the protection of the nonconforming use statute, A.R.S. § 9–462.02. The trial court granted Whiteco's motion for partial summary judgment, declaring that § 9–462.02(B) prohibited the City from enforcing the vacant lot ordinance against Whiteco. After a bench trial on the remaining claims, the court entered detailed findings of facts and conclusions of law, permitted Whiteco to retain three billboards, ordered Whiteco to remove the second advertising face from another billboard, and ordered Whiteco to remove eleven of the contested billboards because they had lost their nonconforming use status.

## APPEAL

### A. Vacant Lot Ordinance

¶3 The City first argues that the trial court erred in refusing to enforce the vacant lot ordinance. The relevant facts are undisputed. The billboards that are the subject of this action were erected on undeveloped land before the City enacted its vacant lot ordi-

nance. In 1985, the City enacted § 3–59(a)(6)(b),[1] which provides:

Billboards are prohibited on any developed property. Any existing billboard must be removed before a certificate of occupancy will be issued for a development on any undeveloped parcel which is subject to the requirements of section 23–409, sections 23–534 through 539 or the Uniform Administrative Code, Section 302.

¶ 4 After the ordinance was enacted, Whiteco sued the City in federal court, claiming that the ordinance was unconstitutional and exceeded the authority granted the City by § 9–462.02(A). The City stipulated that it would not enforce the ordinance against Whiteco while the lawsuit was pending.

¶ 5 In 1993, the Ninth Circuit Court of Appeals declared the ordinance constitutional and enforceable. *Outdoor Systems v. City of Mesa,* 997 F.2d 604 (9th Cir.1993); *see also Outdoor Systems v. City of Mesa,* 169 Ariz. 301, 819 P.2d 44 (1991). Apparently in response to that decision, in 1994 our legislature enacted § 9–462.02(B), which provides:

A municipality shall not require as a condition for a permit or for any approval, or otherwise cause, an owner or possessor of property to waive the right to continue an existing nonconforming outdoor advertising use or structure without [paying for or relocating the use or structure].

¶ 6 After subsection (B) was enacted, but just before it became effective, the City sued Whiteco seeking removal of the billboards. The City moved for partial summary judgment, claiming that subsection (B) could not be applied retroactively to bar enforcement of § 3–59(a)(6)(b) as to parcels developed after the ordinance was enacted but before the effective date of subsection (B). Whiteco also moved for partial summary judgment, claiming that subsection (B) prohibited enforcement of § 3–59(a)(6)(b) against the billboards in issue because the City's cause of action had not been litigated to judgment prior to the effective date of subsection (B).

The trial court granted Whiteco's motion and denied the City's.

¶ 7 At the outset, we note that the City has attempted to raise new arguments on appeal. Below, the City made a threadbare argument that subsection (B) should not apply retroactively because building permits for each contested property at issue were issued prior to the effective date of subsection (B). This argument, at least implicitly, is reflected in the City's argument on appeal that subsection (B) impairs the City's vested rights. On appeal, however, the City argues for the first time that subsection (B) affects substantive rights; that application of subsection (B) violates Arizona judicial policy and the separation of powers doctrine; and that statutory amendments imposing monetary obligations on the government may not be applied retroactively. Several of these arguments were first raised in the City's reply brief. Except for the City's vested rights argument, which is the only argument implicitly raised below, we will not address the City's other arguments regarding subsection (B) which were raised for the first time on appeal. *ABC Supply, Inc. v. Edwards,* 191 Ariz. 48, 952 P.2d 286 (App.1996); *Murphy v. Town of Chino Valley,* 163 Ariz. 571, 789 P.2d 1072 (App.1989); *Richter v. Dairy Queen of Southern Arizona,* 131 Ariz. 595, 643 P.2d 508 (App.1982).

¶ 8 We review the application of subsection (B) to these facts de novo. *Schwarz v. City of Glendale,* 190 Ariz. 508, 950 P.2d 167 (App.1997). If, as the City argues, subsection (B) impairs the City's vested rights, the subsection is operating retroactively. *Tower Plaza Investments Ltd. v. DeWitt,* 109 Ariz. 248, 508 P.2d 324 (1973). Generally, a statute does not apply retroactively unless the legislature specifically so provides. A.R.S. § 1–244; *Haines v. Police Pension Bd.,* 152 Ariz. 546, 733 P.2d 1129 (App.1986). Statutes pertaining to procedures and remedies that do not impair vested rights are exceptions to this general rule. *Wilco Aviation v. Garfield,* 123 Ariz. 360, 599 P.2d 813 (App.1979).[2]

---

1. Originally, the ordinance was numbered as Tucson Code § 3–39(3)(6)(b).

2. The issue of retroactivity is complex and problematic. *See generally* Jill E. Fisch, *Retroactivity and Legal Change: An Equilibrium Approach,* 110 Harv. L.Rev. 1055 (1997), and Jan G. Laitos,

¶ 9 Municipalities do not have vested rights in their municipal powers because the legislature has virtually unlimited authority over them; "[i]t may incorporate or disincorporate them; it may add to or take away from their territorial area; it may grant to or take away from them such powers as it may see fit." *Udall v. Severn*, 52 Ariz. 65, 69, 79 P.2d 347, 348 (1938); *see also State Bd. of Control v. Buckstegge*, 18 Ariz. 277, 158 P. 837 (1916). "In the absence of any express or implied restriction in the constitution, political powers conferred upon municipal corporations for local government are not vested rights as against the state, and the legislature has the absolute power to change, modify or destroy them." 2 Dennis Jensen & Gail A. O'Gradney, *Eugene McQuillin The Law of Municipal Corporations*, § 4.05 at 18 (3d ed.1996). *See also Atkin v. Kansas*, 191 U.S. 207, 24 S.Ct. 124, 48 L.Ed. 148 (1903); *Blount v. MacDonald*, 18 Ariz. 1, 155 P. 736 (1916); 56 Am.Jur.2d *Municipal Corporations* § 23 (1971).

¶ 10 The City's power to enact zoning ordinances derives exclusively from the state. *Levitz v. State*, 126 Ariz. 203, 613 P.2d 1259 (1980); *see also Outdoor Systems v. City of Mesa*, 169 Ariz. 301, 819 P.2d 44. The City, therefore, does not have vested rights in its zoning powers, and the state can reduce or condition those powers, as it did through subsection (B). *See Udall*.

¶ 11 The City cites *In re Dos Cabezas Power District*, 17 Ariz.App. 414, 498 P.2d 488 (1972), as authority for the general proposition that a city can have vested rights. *Dos Cabezas*, however, concerned the vested rights of people seeking to form a power district, not the rights of the nonexistent district. That case neither explicitly or implicitly held that municipalities can have vested rights in powers granted by the state. Cf. *Brown Wholesale Elec. Co. v. H.S. Lastar Co.*, 152 Ariz. 90, 95, 730 P.2d 267, 272 (App. 1986), quoting *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 21 N.E.2d 318, 321 (1939) ("[T]he legislature cannot pass a retrospective law impairing the obligation of a

contract, nor deprive a *citizen* of a vested right.") (emphasis added). The City, therefore, has failed to rebut the rule that cities do not have vested rights in powers derived from the state.

¶ 12 Finally, "[a] cause of action depending solely on statute is not a vested right protected by the Constitution." *Brown Wholesale*, 152 Ariz. at 95, 730 P.2d at 272. The City's cause of action is totally dependent on A.R.S. § 9–462.01, *Levitz; Outdoor Systems v. City of Mesa*, 169 Ariz. 301, 819 P.2d 44, therefore it is not a vested right. The City attempted to convert its cause of action into a vested right by filing its lawsuit prior to the effective date of subsection (B). It has not, however, cited any authority suggesting that the filing of a lawsuit saves a cause of action that is dependent on a statute that is modified or repealed to eliminate the cause of action. To the contrary, "[e]very right or remedy created solely by a modified statute disappears or falls with the modified statute unless carried to final judgment before the repeal or modification." *Dos Cabezas*, 17 Ariz.App. at 420, 498 P.2d at 494. *See also Brown Wholesale*, 152 Ariz. at 95, 730 P.2d at 272 ("[A]n action wholly dependent on the existence of a statute abates if the statute is repealed without a savings clause before judgment is final.").

¶ 13 The City's action is wholly dependent on § 9–462.01 which was modified by § 9–462.02(B). Subsection (B) prohibits the City from requiring the removal of billboards as a condition of issuing a permit or "otherwise caus[ing]" their removal other than by purchase, condemnation, or relocation. This broad language withdraws the City's power to remove billboards under its vacant lot ordinance as presently written. Because the City had not prosecuted its lawsuit to a final judgment before the effective date of subsection (B), it was without power to continue the action seeking to require the removal of the billboards under Tucson Code § 3–59(a)(6)(b).

*Legislative Retroactivity*, Wash. U.J. Urb. & Contemp. L. 81 (1997). Whiteco's argument that subsection (B) pertains to remedies, and may

therefore apply retroactively, has merit, but we do not decide the case on that basis.

¶ 14 We conclude that the City did not have vested rights in the powers granted by the state under §§ 9–462.01 or 9–462.02, that the City's cause of action was not a vested right because it was entirely dependent on the grant of authority in § 9–462.01, and that the filing of the lawsuit did not convert the cause of action into a vested right. Partial summary judgment in favor of Whiteco on this issue, therefore, was proper.

*B. Second Advertising Face*

¶ 15 The City contends that the trial court erred in ordering Whiteco to remove the second advertising face of a billboard located at 2844 North First Avenue, rather than ordering Whiteco to remove the billboard entirely after the trial court concluded that the addition of the second advertising face "was improper and not permitted."

¶ 16 The billboard was constructed as a single-faced billboard pursuant to a permit issued by the City. It became a nonconforming use after the City amended its sign code to prohibit billboards within a certain distance of one another. Whiteco later added a second advertising face to the billboard without obtaining a permit.

¶ 17 The City contends the billboard lost its nonconforming use status because "[t]he addition of a second advertising face to the billboard was a substantial change and resulted in virtually the creation of a new sign," and the addition, therefore, "effectively created an illegal sign subject to removal." Whiteco argues, however, that the Tucson Code allows billboards to have two advertising faces.[3] This argument is irrelevant as to whether the billboard lost its nonconforming use status; the relevant inquiry is whether the property remains unchanged or whether a change constitutes a reasonable repair or alteration. *See Arizona Foundation for Neurology & Psychiatry v. Sienerth*, 13 Ariz.

App. 472, 477, 477 P.2d 758, 763 (1970) (statute protects rights of property owners whose property remains "unchanged" after zoning ordinance that creates nonconforming use). Whiteco does not dispute that the billboard as expanded was not entitled to protection under § 9–462.02 and does not argue the expansion was a "reasonable repair or alteration." *See* § 9–462.02(A). The sole remaining inquiry, therefore, is whether the remedy adopted by the trial court, removal of the second billboard face, was appropriate.

■ ¶ 18 Although adding the second face to the billboard was an impermissible expansion of the nonconforming use, the Tucson Code does not require that a billboard be removed when it has been expanded. *See* Tucson Code § 3–91("No nonconforming sign shall be *moved, altered,*[4] *removed and reinstalled, or replaced,* unless it is brought into compliance with the requirements of [the sign code].") (emphasis added). This ordinance is vastly different from the ordinance in *State ex rel. Western Outdoor Advertising Co. v. Missouri Highway and Transportation Commission*, 776 S.W.2d 496 (Mo.App. 1989), upon which the City relies, which required the removal of any nonconforming billboard that had increased in size. Nothing in the Tucson Code prevented the trial court from ordering Whiteco to remove only the second advertising face, thereby restoring the billboard to its nonconforming use configuration. Furthermore, allowing the original billboard to remain after the second face is removed does not change the nonconforming use or extend its life.

¶ 19 In actions for equitable relief, we defer to the trial court's discretion in fashioning the remedy. *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 909 P.2d 393 (App. 1995). Because neither the Tucson Code nor § 9–462.02 prohibited the trial court's action, we cannot find that it abused its discretion in

---

**3.** Whiteco did not cite to any authority or refer to specific portions of the record supporting its argument, and therefore failed to comply with Rule 13, Ariz. R. Civ.App. P., 17B A.R.S. Whiteco's alternate argument, that the City should be estopped from removing the billboard, similarly fails to comply with Rule 13. We reject this estoppel argument on the same grounds as those discussed in Whiteco's cross-appeal.

**4.** We note that the Tucson Code provision prohibiting alterations directly conflicts with § 9–462.02. The City does not, however, argue that the addition of the second billboard face was an "alteration"; it argues that the addition was an expansion or addition, citing *Sienerth*.

ordering Whiteco only to remove the second billboard face.

### C. Illegal locations

¶ 20 The City next challenges the trial court's ruling that three billboards, located at 3400 North Fairview Avenue, 401 South Park Avenue, and 5513 East Golf Links Road, could not be removed because the billboards were constructed "in conformity with permit specifications approved by the City" and, therefore, "the City is estopped from asserting any violation of [a] zoning or building code in existence at the time of the issuance of the permit[s]."

¶ 21 The City first contends it cannot be estopped from removing the billboards because "[b]illboards constructed at illegal locations obtain no vested right[s] and are therefore subject to removal," citing *Outdoor Systems v. Arizona Department of Transportation,* 171 Ariz. 263, 830 P.2d 475 (App.1992). Although Whiteco could not obtain vested property rights if the permits authorized construction of the billboards in violation of then-existing City building or zoning regulations, *see id.,* this would not prohibit the trial court from estopping the City from asserting that the permits were issued in violation of then-existing building or zoning regulations. *See id.* (after concluding plaintiff did not obtain vested property rights, court considered whether to apply estoppel under the facts of the case).

¶ 22 The elements of equitable estoppel are: "(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." *Valencia Energy Co. v. Arizona Dep't of Revenue,* 191 Ariz. 565, ¶ 35, 959 P.2d 1256, ¶ 35 (1998). Citing *National Advertising Co. v. Arizona Department of Transportation,* 126 Ariz. 542, 617 P.2d 50 (App.1980), the City argues that the government cannot be estopped when it is pursuing governmental functions. Eighteen years ago, our supreme court disapproved of the rule prohibiting the application of principles of equitable estoppel against a sovereign, stating that estoppel will be applied against a sovereign, even a sover-

eign exercising its governmental functions, when justice dictates. *Freightways, Inc. v. Arizona Corp. Comm'n,* 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981), *quoting Silver City Consol. Sch. Dist. No. 1 v. Bd. of Regents,* 75 N.M. 106, 401 P.2d 95, 99 (1965) (" 'We recognize that estoppel in its usual sense is not generally applicable against a sovereign in the exercise of governmental functions, but where right and justice demand it, the doctrine will be applied.' "). Estoppel must, however, be applied against the government only with great caution. *Valencia Energy.* "[T]he government may be estopped only when its 'wrongful conduct threatens to work a serious injustice and ... the public interest would not be unduly damaged.' " *Id.* at ¶ 33, 959 P.2d at ¶ 33, *quoting Freightways,* 129 Ariz. at 248, 630 P.2d at 544.

¶ 23 To estop the City, therefore, the trial court would be required to find that the three general elements of estoppel applied, that a "serious injustice" would result from the City's conduct, and that the public interest would not be "unduly damaged" by the application of principles of estoppel. *Valencia Energy; Freightways.* This balancing test requires the court to analyze, for each billboard, a variety of factors, including the presence of long-term leases, recent investments or expenditures on the billboard, any benefits derived from the billboard owner's lengthy use of the billboard, the presence of other billboards in the area or within the city, the character of the neighborhood, and the alleged violation which created the nonconforming use. Even if estoppel would have been appropriate at the time the permit was originally issued, the trial court should address whether estoppel is still appropriate given the current circumstances.

¶ 24 The trial court's findings of fact and conclusions of law do not address these issues, and therefore, we are unable to uphold the trial court's judgment that the City should be estopped from asserting that the permits for the three billboards were issued in violation of then-existing zoning or building code regulations. "Where possible, when a trial court in a non-jury case fails to make or makes insufficient findings of fact and

conclusions of law, a reviewing court should remand the case to the trial court for further findings." *Miller v. Bd. of Supervisors,* 175 Ariz. 296, 300, 855 P.2d 1357, 1361 (1993). Accordingly, we remand that issue for further consideration and findings by the trial court. If, on remand, the trial court should conclude that the City is not estopped as to any or all of the three billboards, it must further determine whether the billboards were erected in violation of any then-existing zoning or building code regulations before it can order their removal.

## CROSS–APPEAL[5]

¶ 25 Whiteco contends the trial court erred in requiring Whiteco to remove eleven of its billboards, claiming that the City should be estopped from seeking removal of any of the billboards, or alternatively, that replacement of the structural supports of two of the billboards and relocation of four of the billboards did not justify their removal.[6] We are bound by the trial court's findings of fact unless they are clearly erroneous, but review questions of law de novo. *Scottsdale Unified Sch. Dist. No. 48 of Maricopa County v. KPNX Broadcasting Co.,* 191 Ariz. 297, 955 P.2d 534 (1998).

### A. Estoppel

¶ 26 Whiteco first asserts that the City should be estopped from seeking the removal of any of the challenged billboards, because they "have been in place for the last 20 years or more … [and n]ot once during this extensive period of time did the City ever indicate that there was any problem with the billboards or the sign permits the City's own Sign Code staff had issued." As to each of these billboards, however, the trial court found that Whiteco either constructed the billboard in violation of a permit, or relocated or removed and replaced the billboard without a permit. It was Whiteco's

conduct, therefore, that triggered the termination of the nonconforming use status; the City did nothing upon which Whiteco could rely. Under these circumstances, estoppel does not apply. *See United Bank v. Mesa N.O. Nelson Co.,* 121 Ariz. 438, 442, 590 P.2d 1384, 1388(1979) ("Estoppel is not applicable where the one asserting the doctrine is guilty of misconduct toward the person against whom he seeks to have estoppel applied.").

### B. Structural Changes

¶ 27 Whiteco next argues that the trial court erred in ordering it to remove two billboards, one located at 1090 North Swan Road and the other at 2699 East Valencia Road. The two billboards had been constructed with a "twin I-beam support structure," which Whiteco had replaced with a "uni-pole structure" without first obtaining a permit. The City's sign code provides that "[n]o nonconforming sign shall be moved, altered, removed and reinstalled, or replaced, unless it is brought into compliance with the requirements of [the sign code]." Tucson Code § 3–91. Whiteco contends, however, that changing the support structure is "merely a 'reasonable repair or alteration' protected by A.R.S. § 9–462.02."

¶ 28 Under similar facts, Division One of this court held that "such a change in the structural support system of the billboard does not constitute a 'reasonable alteration' within the meaning of [§ 9–462.02]." *Gannett Outdoor Co. v. City of Mesa,* 159 Ariz. 459, 460, 768 P.2d 191, 192 (App.1989). Whiteco contends *Gannett* is distinguishable based on its procedural history. In *Gannett,* the court considered an appeal from a special action proceeding in the trial court which sought relief from a board of adjustment's decision. Division One was bound by the facts below and reviewed the decision of the board of adjustment for "error." *Id.* at 461, 768 P.2d at 193. Our review is the same. *See Scottsdale Unified.* Although the procedural his-

---

5. Whiteco failed to designate in its Combined Answering Brief and Opening Brief which arguments related to the cross-appeal. We address those arguments challenging the trial court's grant of partial judgment for the City in this section.

6. Other than its estoppel argument, Whiteco has not raised on appeal any other challenge to the removal of the six billboards located at 3655 East Golf Links Road, 6300 East Golf Links Road, 6427 East Golf Links Road, 6450 East Grant Road, 630 West Speedway Boulevard, and 1302 South Park Avenue.

tory here is different, that difference does not make *Gannett* distinguishable.[7]

 ¶ 29 Whiteco next contends the court in *Gannett* never directly decided whether "replacement of a billboard's supporting structure was a permissible repair or alteration." As to the issue of alterations, this is clearly incorrect. *See Gannett.*[8] Although the court in *Gannett* never considered whether replacement of the support structure was a "repair" under § 9–462.02 because *Gannett* did not assert that its activities were repairs, we have considered the issue. We conclude that the complete replacement of the support structure is not a "reasonable repair" under § 9–462.02. *See Park Outdoor Advertising Co. v. Commonwealth*, 86 Pa.Cmwlth. 506, 485 A.2d 864, 866 (1984) (replacement of wooden frame and support posts with metal frame and single steel support post was "too extensive to be considered a repair or customary maintenance"). Nonconforming billboards would never be removed if this type of upgrade and replacement of the structural portions of the billboards was permissible. *Cf.* § 9–462.02(A); *Gannett*, 159 Ariz. at 461, 768 P.2d at 193 ("Public policy favors the eventual elimination of nonconforming uses.").

¶ 30 Under the Tucson Code, *Gannett*, *Park Outdoor Advertising*, and the public policy favoring removal of nonconforming uses, these billboards lost their nonconforming status when Outdoor replaced their twin I-beam support structure with a uni-pole structure. The trial court properly ordered Whiteco to remove them.

## C. Relocated Billboards

 ¶ 31 Whiteco next argues that billboards located at 1090 North Swan Road, 10 North Kolb Road, 7111 East Broadway Boulevard, and 3656 East Grant Road did not lose their nonconforming use status when they were moved from one location on a parcel to another location on the same parcel. The Tucson Code prohibits moving a nonconforming billboard unless the billboard is brought into compliance with the sign code, *see* § 3–91, and it is not alleged that any of the billboards now comply with the sign code. Whiteco's actions, therefore, caused the billboards to lose their nonconforming status unless Whiteco's actions were protected under § 9–462.02.

¶ 32 Relying on *Outdoor Systems v. City of Mesa*, 169 Ariz. 301, 819 P.2d 44, Whiteco contends that § 9–462.02 protects the entire parcel on which the billboard sits, and therefore permits the relocation of the billboards. Although the court in *Outdoor Systems* held that the "existing property" protected by § 9–462.02 included the whole parcel, it held that a change in use of any part of the parcel could result in the *loss* of nonconforming use status. The court further noted that its interpretation of "existing property" was proper in light of "the purpose of zoning regulations and the strong public policy against nonconforming uses in general." *Id.* at 309, 819 P.2d at 52.

¶ 33 Whiteco attempts to distinguish a case upon which the City relies, *People ex rel. Department of Public Works v. Ryan Outdoor Advertising*, 39 Cal.App.3d 804, 114 Cal.Rptr. 499 (1974), in which a California appellate court held that moving a billboard within the same parcel caused it to lose its nonconforming status. Whiteco argues that the case is somehow inapposite because it interpreted a statute that prohibited new "placings" of billboards, and such a statute does not exist in Arizona. Tucson Code § 3–

---

7. Whiteco's claim that *Gannett* is distinguishable based on its procedural history may stem from its quotation of an unrelated portion of the decision in *Gannett* concerning whether the superior court exceeded its jurisdiction in issuing its order. Division One's conclusion that the superior court exceeded its jurisdiction, however, did not impact its conclusion that a change in the structural support system was not a reasonable alteration.

8. The first paragraph of *Gannett* states:

In this appeal, we consider the issue of whether the replacement of an existing multiple-pole billboard structure with a new mono-pole structure of the same dimensions constitutes a "reasonable alteration" of non-conforming property within the meaning of A.R.S. § 9–462.02. We conclude that such a change in the structural support system of the billboard does not constitute a "reasonable alteration" within the meaning of the statute.

159 Ariz. at 460, 768 P.2d at 192.

91, however, does prohibit nonconforming signs from being "moved" or "removed and reinstalled." *Ryan Outdoor*, therefore, is persuasive.

¶ 34 Although § 9–462.02 does not specifically prohibit new "placings" of nonconforming billboards, it only protects Whiteco's right to make reasonable repairs and alterations. *Ryan Outdoor* supports the City's argument that relocating a billboard is not a routine repair or alteration and goes beyond the protections of § 9–462.02. Furthermore, the holding in *Gannett* suggests that the removal and replacement of a sign for any reason, even if re-erected in precisely the same location, is a violation of the sign code, and not protected by § 9–462.02. Whiteco's relocation of the signs, therefore, was not a reasonable repair or alteration.

¶ 35 Further, because § 9–462.02 does not restrict the City's power to prohibit Whiteco from moving or removing and replacing the billboards, the prohibition in the ordinance is valid and enforceable. *Cf. In re Estate of Tovrea*, 173 Ariz. 568, 573, 845 P.2d 494, 499 (App.1992) ("Under the rule of *expressio unius est exclusio alterius* ... the statement of one exception implicitly denies the existence of other unstated exceptions.").

¶ 36 The trial court did not err in finding that moving the signs was not "reasonable repair or alteration" of the nonconforming use and in ordering the removal of these billboards.

## CONCLUSION

¶ 37 The trial court's judgment is vacated and remanded as to the billboards located at 3400 North Fairview Avenue, 401 South Park Avenue, and 5513 East Golf Links Road. In all other respects, the judgment is affirmed.

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge and PHILIP G. ESPINOSA, Judge.