401 P.2d 95

SILVER CITY CONSOLIDATED SCHOOL
DISTRICT NO. 1, a public corporation, and
Chester Williams, Fred Clark, Rupert Spiv-
ey, Mancel Mortensen and Murray Ryan,
members of its governing board, Plaintiffs-
Appellees,

v.

The BOARD OF REGENTS OF NEW MEX-
ICO WESTERN COLLEGE and Harrison
Schmitt, Howard Miller, Lola Upton, Lucy
McMillen and F. M. Bowman, the members
thereof, Defendants-Appellants.

No. 7673.

Supreme Court of New Mexico.

April 5, 1965.

Shantz & Dickson, Silver City, for appellants.

J. Wayne Woodbury, Silver City, for appellees.

NOBLE, Justice.

The Board of Regents of New Mexico Western College has appealed from a writ of mandamus requiring it to transfer and convey to the school district the Silver City high school building, its furnishings, and sufficient land surrounding the building for school purposes.

Acting under authority of Chapter 36, Laws 1937 (§§ 73–8–41 through 73–8–48, N.M.S.A.1953), the Silver City Consolidated School District No. 1 sold its bonds in the amount of $62,500 and paid the same over to New Mexico Western College, which used this money, together with some of its own and matching federal funds, to construct and furnish a high school building on its campus. The college operated and maintained the high school and accepted all eligible students of the school district until June, 1960, when, because the legislature had refused to appropriate further funds for the continued operation of the school, it relinquished such operation to the Silver City School District. The college, however, refused to transfer and convey the high school buildings, lands and furnishings to the school district in accordance with its demand made pursuant to Section 6 of the 1937 act, § 73–8–46, N.M.S.A.1953, which requires:

"In the event any such state educational institution accepting funds from any such school district, which have been used in whole or in part for the erecting or furnishing of high school buildings or for the purchasing of lands therefor, shall abandon or cease to conduct a high school, then such buildings and furnishings, together with sufficient land surrounding said buildings for school purposes, shall by the governing body of such state educational institution be immediately transferred and conveyed to such school district."

The college's refusal was based, in part, upon its position that Section 6 of the 1937 statute contains a subject not clearly expressed in the title of the act and, therefore, contravenes Art. IV, § 16 of the New Mexico Constitution, the pertinent portion of which reads:

"The subject of every bill shall be clearly expressed in its title, * * *; but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void. * * *"

The title to Chapter 36, Laws 1937, was expressed thus:

"An Act Authorizing School Districts in Which Are Located State Educational Institutions Which Conduct High Schools, to Vote Upon, Issue and Sell School District Bonds for the Purpose of Joining With Such State Educational Institution in the Erecting and Furnishing of High School Buildings or Purchasing Ground for the Same; Providing for Contributions by Counties to State Educational Institutions So Conducting High Schools for the Maintenance Thereof; Contributions to Such School Districts So Issuing Bonds by Other School Districts of Such County Having Students Attending Such High School; and Declaring an Emergency."

The validity of these bonds issued under the provisions of the 1937 statute was challenged in White v. Board of Education of Silver City, 42 N.M. 94, 75 P.2d 712, which held the law to be constitutional on all grounds invoked. The requirement for transfer and conveyance of the school building, its furnishings and sufficient land surrounding the building for school purposes was discussed in the White opinion but this section was not there challenged as containing a subject not expressed in the title.

Gallegos v. Wallace, 74 N.M. 760, 398 P. 2d 982, filed October 5, 1964, discussed the guidelines by which such constitutional questions are to be resolved and cited our own decisions setting forth the true test to be applied in determining whether legislative acts offend Article IV, Section 16 of the Constitution. We there said:

"* * * that the title need not be an index of everything in the act itself, but need only give notice of the subject matter of the legislation and is sufficient if, applying every reasonable intendment in favor of its validity, it may be said that the subject of the legislative enactment is expressed in its title. * * *"

One of the primary purposes of the constitutional requirement, as pointed out in State v. Ingalls, 18 N.M. 211, 135 P. 1177,

is to prevent fraud or surprise upon the legislature by means of hidden or concealed provisions of which the title gives no intimation and which, therefore, through inadvertence or carelessness might be unintentionally adopted. See, also, Fowler v. Corlett, 56 N.M. 430, 244 P.2d 1122.

We are firmly committed to the policy of applying a liberal construction to a specific title as well as to one containing broad and comprehensive language. In pursuance of such policy, the term "subject," as used in the Constitution, is to be given a broad and extended meaning so as to authorize the legislature to include in one act all matters having a logical or natural connection. Johnson v. Greiner, 44 N.M. 230, 101 P.2d 183; State ex rel. Taylor v. Mirabal, 33 N.M. 553, 273 P. 928, 62 A.L.R. 296.

It was said in State v. Miller, 33 N.M. 200, 263 P. 510, that the "subject" of the legislation is to be determined by the paramount purpose to be accomplished, rather than by the details through which that purpose is to be attained. We there said that while the subject may have but one object, the means of attaining that object may embrace many subordinate subjects, all of which contribute to and are comprised within the principal subject. All of those things which are reasonably suggested by the nature of the subject of the title as necessary or appropriate to accomplish its expressed purpose and sufficiently indicated by such title. Miller also said that we will look both to the title and to the body of the legislation, and, from a consideration of all of the provisions of both, will determine whether its provisions are germane to a general subject or purpose expressed in its title.

We are not concerned here with a restrictive title as in State ex rel. Salazar v. Humble Oil & Refining Co., 55 N.M. 395, 234 P.2d 339, or Gallegos v. Wallace, supra. Measured by the standard consistently applied by this court and keeping in mind the fundamental principle that a law will not be declared unconstitutional unless its invalidity is so apparent as to leave no reasonable doubt, we conclude that the subject matter of the questioned legislation is the acquisition, maintenance, and operation of high schools and necessary buildings for the children of the area such high school serves. When so viewed, it becomes apparent that the title is not misleading or deceiving. The requirement for transfer of the building and its furnishings by the college upon its ceasing to conduct a high school is clearly within the purpose of the legislation, and the title gives reasonable notice of the general subject legislated upon and is, therefore, sufficient. The legislature, before which the bill is pending, is the body intended to be protected by Art. IV, § 16, of the Constitution, and it is immaterial that a beneficiary of such legislation may claim surprise many years after its enactment into law.

We recognize that estoppel in its usual sense is not generally applicable against a sovereign in the exercise of governmental functions, but where right and justice demand it, the doctrine will be applied, particularly where, as here, the controversy is between a public agency and a governmental subdivision. Consolidated School District No. 2 of Pike County v. Cooper, (Mo.App.), 28 S.W.2d 384; May v. City of Kearney, 145 Neb. 475, 17 N.W.2d 448; note 1 A.L.R.2d 338. In this case, the college, having actively procured the enactment into law of this statute, and having accepted benefits thereunder for over twenty years, should not now be heard to assert invalidity of the statute. Hinkle v. City of West Monroe, 196 La. 1078, 200 So. 468; 16 C.J.S. Constitutional Law § 90, p. 289.

It is next argued that § 73–8–46, supra, is repugnant to the due process clause of Art. II, § 18, of the Constitution because it provides no standard for measuring what is "sufficient land surrounding said building for school purposes." We find the contention to be without merit. Reasonable precision is all that is required of statutes. Legislative enactments may, of course, be declared invalid if their meaning is so uncertain that the court is unable, by applying known and accepted rules of construction, to determine the legislative intent with any degree of certainty. But, as this court said in State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007: "* * * absolute or

mathematical certainty is not required in the framing of a statute." It was there pointed out that use of such terms as "reasonable" or "unreasonable" in defining standards of conduct and the like have been held not to render a statute invalid for uncertainty. See, also, Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 587, 76 L.Ed. 1167. In the language of the Supreme Court of the United States:

"* * * The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. * * The use of common experience as a glossary is necessary to meet the practical demands of legislation. * * *"

In this instance, it is obvious that the legislation, general in its application, could not describe specific land. The expression of that which is necessarily implied to make the provision workable does not destroy it.

Finally, it is argued that the high school building and its surrounding land is private property and is protected by Art. II, § 20 of the New Mexico Constitution which proscribes the taking of private property for a public use without the payment of just compensation. In support of its position, the Board of Regents points to § 73–22–4, N.M.S.A.1953, providing that the board shall constitute:

"* * * a body politic and corporate, and shall have power to sue and be sued, to contract and be contracted with, and the title to all property belonging to each such normal school shall be vested in the respective corporate bodies and their successors."

We cannot agree. It cannot be doubted but that New Mexico Normal School, and its successor, New Mexico Western College, are state institutions. See Livingston v. Regents of New Mexico College of Agric. & Mechanic Arts., 64 N.M. 306, 328 P.2d 78. The college was organized for the sole purpose of conducting and operating a school as a state institution. Sections 73–22–1 to 73–22–36, incl., N.M.S.A.1953. See People ex rel. Board of Trustees v. Barrett, 382 Ill. 321, 46 N.E.2d 951. The body corporate was created by the legislature as the most convenient means of operating the educational institution, its property and affairs, and, although declared by statute to be a body corporate, it is not separate from or independent of the state, and even in the vesting of title in it of public lands and buildings, they nevertheless remain the property of the state. Ross v. Trustees of University of Wyoming, 31 Wyo. 464, 228 P. 642; Coleman v. Whipple, 191 Miss. 287, 2 So.2d 566.

■■■ In this jurisdiction, public property held and used in a proprietary, as distinguished from a governmental, capacity may not be taken for another public use without payment of just compensation. State ex rel. State Highway Comm. v. City of Albuquerque, 67 N.M. 383, 355 P.2d 925. However, the legislature may exercise a control over property acquired by an agency of the state for the performance of a strictly public duty, devolved upon it by law, to the extent of requiring the state agency or governmental subdivision to transfer such property to another agency of the government to be devoted to a strictly public purpose without receiving compensation therefor. 1 Nichols, Eminent Domain, 3rd Ed., § 2.225(1); see State ex rel. State Highway Comm. v. City of Albuquerque, supra.

■■■ While there are undoubtedly some decisions to the contrary, in our view, the operation of a school by a state institution is a governmental rather than a proprietary function. Wallace v. Laurel County Board of Education, 287 Ky. 454, 153 S.W.2d 915; Reed v. Rhea County, 189 Tenn. 247, 225 S.W.2d 49; Treadaway v. Whitney Independent School Dist. (Tex. Civ.App.) 205 S.W.2d 97; State ex rel. Green v. Board of Education of Braxton County, 133 W.Va. 750, 58 S.E.2d 279; Sawaya v. Tucson High School Dist. No. 1, 78 Ariz. 389, 281 P.2d 105. In this instance, the transfer of this property was not only expressly required by the legislature, but was also included in the very statute vesting title to the school property in an institution which the legislature created as a public

corporation for more convenient performance of a strictly public duty. Under such circumstances, it is competent for the legislature to provide for the transfer of such property to another governmental subdivision, to be devoted to a similar public use, without receiving compensation therefor.

The judgment should be affirmed, and it is so ordered.

CARMODY, C. J., and CHAVEZ, MOISE and COMPTON, JJ., concur.