630 P.2d 541

**FREIGHTWAYS, INC., dba Arizona Couriers, an Arizona Corporation, Petitioner,**

v.

**The ARIZONA CORPORATION COMMISSION, Bud Tims, Jim Weeks and John Ahearn, as Members of Said Commission, and Purolator Courier Corp. a New York corporation, and Dial-A-Messenger, Inc. an Arizona corporation, Real Parties in Interest, Respondents.**

No. 15087.

Supreme Court of Arizona.

Feb. 2, 1981.

Rehearing Denied March 10, 1981.

Yankee, Bernstein & Lutich, P. C. by Thomas W. McLellan and A. Michael Bernstein, Phoenix, for petitioner.

Robert K. Corbin, Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for Arizona Corp. Commission.

Evans, Hammond & Milliken by Phil B. Hammond and John R. Tellier, Phoenix, for Purolator Courier Corp.

CAMERON, Justice.

We granted this petition for special action pursuant to Rule 7(a), Rules of Procedure for Special Actions, 17A A.R.S., and Article 6, § 5 of the Arizona Constitution because this is a matter of state-wide importance and there is no equal, plain, speedy and adequate remedy by appeal.

We must answer the following question: Is the Arizona corporation Commission estopped to deny the validity of a certificate of public convenience and necessity because of a defect in the certificate's renewal or issuance in 1928, some fifty years earlier?

The facts necessary to a resolution of this issue are as follows. On 4 June 1924, the Arizona Corporation Commission issued a motor carrier certificate of public convenience and necessity (then called a "permission") to Louis Schade for a one year period. Upon Schade's application, the Com-

mission renewed the permission setting an expiration date of 9 May 1926.

In 1925, the Commission promulgated an order which read in relevant part:

"* * * all permits and certificates now issued and outstanding and which are not for any reason subject to revocation, shall be automatically extended to expire on the 31st day of December, 1926 if the date of expiration named in the permit or certificate is prior to that date * * *.

"Applications for renewal of permits and certificates must be filed on or before the 30th day of November of the calendar year in which the authority to operate expires.

* * *" General Order No. 102–A.

Renewals of Schade's certificate were granted by the Commission extending Schade's authority to operate as a motor carrier until 31 December 1928. Schade filed an application for renewal of the certificate for the year 1929 on 26 December 1928, 26 days after the filing deadline of 30 November imposed by the Commission through General Order 102–A, but 5 days prior to expiration of the certificate. Schade also filed an application on 19 February 1930. Unlike the 26 December application which indicated on its face that it was an application for renewal, the 19 February application did not indicate that it was a renewal application. On 6 March 1930, Schade's certificate was renewed without hearing by the Commission, although it is unclear whether the certificate was issued in response to the application for renewal, filed on 26 December 1929, or the application filed by Schade on 19 February 1930.

After a series of transfers, all approved by the Commission, the petitioner Freightways came into possession of the certificate. Thus the certificate in question has been, as far as the Commission and the holder of the certificate are concerned, continually in force and effect, if not since the certificate was originally issued on 9 June 1924, at least since 6 March 1930.

On 21 December 1979, Freightways filed an application with the Commission to transfer the certificate to United Couriers, Inc. Respondents Purolator Courier Corporation and Dial-a-Messenger, Inc., were granted leave to intervene as protestants and filed a memorandum of law, which was treated by the Commission as a motion to dismiss the transfer application. Respondents contended that the certificate expired on 31 December 1928 because of Schade's failure to comply with the 30 November filing date of General Order 102–A. The Commission denied the motion to dismiss. Purolator filed an application for rehearing, and the Commission rescinded its prior decision and granted Purolator's motion to dismiss the transfer application on the grounds that the certificate expired on 31 December 1928, and consequently there was no certificate to transfer. The Commission also ordered the Attorney General of Arizona to bring an action to enjoin Freightways from further operations as a certificated motor carrier.

From the decisions of the Arizona Corporation Commission, petitioner Freightways, Inc. brought this special action. We accepted jurisdiction and stayed the Commission decision and order pending determination by this court.

If the issuance of the certificate on 6 March 1930 was the result of the 19 February original application, the Commission would have been without jurisdiction to issue the certificate as there was no hearing on the application. *George v. Arizona Corporation Commission*, 83 Ariz. 387, 322 P.2d 369 (1958). As to the late application for renewal filed 26 December 1929, the Commission, in its order, contends:

"In our view, the language of General Order No. 102–A as to the deadline for filing renewal application is jurisdictional. As we noted above, the only authority for renewal of certificates in 1928 was General Order No. 102–A. It would appear, then, that strict compliance with its provisions would be a prerequisite to exercise of the privilege of renewing under General Order 102–A."

The parties agree that the Commission at that time had the power to waive strict compliance with its rules, but there is no indication that this was done in the instant case. This is not surprising because, by the passage of time, such action might not be reflected in the contents of the file presently available. Assuming, however, that the 30 November filing date was jurisdictional and that the certificate (permission) was void after 31 December 1928, we believe that the Commission is estopped to deny the validity of the certificate after over fifty years of use by various holders.

Equitable estoppel or, as it is sometimes called, estoppel in pais, generally may not be invoked against the sovereign. This assumes, of course, that the elements of estoppel exist:

"Equitable estoppel is a rule of justice which, in its proper field, prevails over all other rules. (citation omitted) An equitable estoppel will be found only where all the elements necessary for its invocation are shown to the court. * * *" *United States v. Georgia-Pacific Company*, 421 F.2d 92, 96 (9th Cir. 1970).

The United States Ninth Circuit Court of Appeals has stated:

"Four elements must be present to establish the defense for estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. (citation omitted)" *Hampton v. Paramount Pictures Corporation*, 279 F.2d 100, 104, 84 A.L.R.2d 454, 461 (9th Cir.),[1] *cert. denied* 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960).

We feel that the necessary elements of estoppel have been demonstrated by the facts in the instant case. The Commission knew of the defect in the filing of the application. Indeed, the Commission file contains a memo to the Commission which states that Schade's certificate "was not renewed last year" because of a failure to file reports and pay taxes as a result of a lawsuit by the Arizona Transferman's Association. The memo contains the question, "Do you wish to issue certificate for the year 1930 or hold a hearing? Please advise." One commissioner initialed after writing in the word "approved," and the other noted "issue without hearing as the Commission agreed with parties to the suit." We believe that not only did the Commission know the facts, but expected the certificate to be used by Schade and his successors in interest and recognized by the public. The certificate holders and the public did exactly that for over fifty years.

Freightways, on the other hand, lacked knowledge of any defect in the certificate and relied upon the certificate, and if the Commission succeeds in canceling their certificate, Freightways certainly will be prejudiced by the Commission's position. It is true that Freightways, when it accepted transfer of the certificate, could have discovered the same information the respondents herein found. We agree, however, with the United States Ninth Circuit Court of Appeals that reliance should be considered reasonable if "a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970). It is immaterial that the original certificate holder Schade, knowing the facts, might not have been able to avail himself of the doctrine of estoppel in 1930. We are concerned here with the availability of the doctrine to the present certificate holder, Freightways. We believe that under the facts of this case the elements of estoppel have been shown to exist. The question then is whether the doctrine should be applied to the Commission because it is an entity of the state or

---

1. The New Mexico Supreme Court, citing 19 Am.Jur., Estoppel § 42, listed six elements of estoppel. See *Westerman v. City of Carlsbad*, 55 N.M. 550, 237 P.2d 356 (1951); Otten, Equity: Estoppel Applied Against the State, 10 N.M.L.Rev. 501 (1980). We believe the facts in this case satisfy all six requirements of Westerman.

sovereign. See Thompson, Equitable Estoppel of the Government, 79 Colum. L.Rev. 551 (1979).

Realizing that this "no estoppel" rule has resulted in injustice, the courts have, in certain situations, relaxed the rule. Exceptions have been made, for example, authorizing defensive use of estoppel by allowing a defendant citizen to use the doctrine against a plaintiff government for the reason that "when the government seeks its rights at the hands of a court, equity requires that the rights of others as well, should be protected." *United States v. Stinson*, 125 F. 907, 910 (7th Cir. 1903), *aff'd* 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724 (1905).

Distinction has also been made between governmental and proprietary functions:

"In general, equitable defenses, such as estoppel and laches, will not lie against the state, its agencies or subdivisions in matters affecting governmental or sovereign functions. (citations omitted) On the other hand, when the state, agency or municipality acts within its proprietary capacity, these equitable defenses are available. (citations omitted) * * * " *Mohave County v. Mohave-Kingman Estates, Inc.*, 120 Ariz. 417, 421, 586 P.2d 978, 982 (1978).

Whatever the basis for these exceptions to the general rule, it would appear that where the application of estoppel will not affect the exercise by the state of its governmental powers and sovereignty, or bind it by unauthorized acts of its officers and employees, estoppel will, when justice dictates, be applied to the state. See Annotation, 1 A.L.R.2d 338 (1948); Note, Never Trust A Bureaucrat: Estoppel Against the Government, 42 S.Cal.L.Rev. 391 (1969).

The United States Ninth Circuit Court of Appeals has held that the "sovereign" can be estopped if the government's wrongful conduct threatens to work a serious injustice and if the public interest would not be unduly damaged by the imposition of estoppel. *United States v. Lazy FC Ranch*, 481 F.2d 985, 989, 27 A.L.R.Fed. 694 (9th Cir. 1973). In the instant case, the interest of the public will not be damaged by the upholding of the validity of the certificate of convenience and necessity, and there is no threat to the sovereignty of the Commission in upholding the validity of the certificate the Commission has issued, renewed and transferred for over a fifty year period. On the other hand, the damage that will be done to Freightways which relied upon the certificate in the operation of its freight business will be great.

Balancing the equities, we believe the Commission should be estopped from questioning the validity of the certificate based upon conduct which occurred in 1929 and from declaring Freightways' certificate void:

"We recognize that estoppel in its usual sense is not generally applicable against a sovereign in the exercise of governmental functions, but where right and justice demand it, the doctrine will be applied * * * ." *Silver City Consolidated School District No. 1 v. Board of Regents*, 75 N.M. 106, 111, 401 P.2d 95, 99 (1965).

Admittedly, we base much of our decision on the long period of time that has elapsed between the defect in the issuance of the certificate and the attempt by the Commission to cancel it. How much time is necessary before a void certificate can ripen into a valid certificate we do not consider at this time. That will have to be determined on a case by case basis, but we have no hesitancy in saying that a half century is sufficient.

Since the Commission based its decision on the validity of the certificate alone and did not consider the other objection raised by the two protestants, that is whether the transferee was a fit and proper party to be issued a certificate, the matter will have to be remanded for further hearings consistent with this opinion.

Reversed and remanded.

STRUCKMEYER, C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, Vice Chief Justice, concurring.

I concur in the result.