NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

FLOOD CONTROL DISTRICT OF MARICOPA COUNTY,
a political subdivision, *Plaintiff/Appellee,*

*v.*

ABC SAND AND ROCK COMPANY, INC., an Arizona corporation,
*Defendant/Appellant.*

No. 1 CA-CV 13-0450
FILED 06-10-2014

---

Appeal from the Superior Court in Maricopa County
No. LC2012-000400-001
The Honorable Crane McClennen, Judge

**AFFIRMED**

---

COUNSEL

Hinshaw & Culbertson LLP, Phoenix
By Stephen W. Tully
*Counsel for Plaintiff/Appellee*

White Berberian PLC, Tempe
By Sean B. Berberian and Steven M. White
*Counsel for Defendant/Appellant*

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Margaret H. Downie joined.

**K E S S L E R**, Judge:

¶1        Defendant/Appellant ABC Sand and Rock Company, Inc. ("ABC") appeals from the superior court's order vacating the final decision of the Maricopa County Flood Control District Board of Hearing Review ("the Board") and remanding with instructions to issue factual findings and conclusions of law.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This case involves a dispute between the Maricopa County Flood Control District ("the District") and ABC regarding ABC's mining permit.  The District is a political taxing subdivision of the State of Arizona responsible for regulating floodplains.  Ariz. Rev. Stat. ("A.R.S.") § 48-3603(A), (C) (Supp. 2013).[1]  ABC is a mining company operating in the Aqua Fria River floodway.  Pursuant to A.R.S. § 48-3613(A) (Supp. 2013), a person/entity must obtain written authorization from the District to operate in the floodplain.  ABC maintained written authorization until early 2011.

¶3        ABC's permit was scheduled for renewal in February 2011.  On February 14, 2011, ABC sent the District a $6400 check for its renewal fee, along with a lengthy letter appearing to register concerns about perceived excess regulation and requesting the District to return its $6400 and summarily renew its permit.[2]  At the District's request, ABC submitted a renewal application in March.

---

[1] We cite the current versions of statutes when no revisions material to this decision have since occurred.

[2] ABC's letter complained of a "crushing tide of debilitating regulations" and "a plethora of Draconian measures," which it analogized to "the Dark Ages remedy of applying leeches in an attempt to bleed the patient back to health," and the collapse of the Soviet Union.

¶4          In April 2011, the District sent ABC a letter requesting additional information, including a current topographic survey of the mine site, copies of an updated development plan, and a mining plan. The District's letter warned failure to respond would render ABC's renewal application incomplete.  On May 11, 2011, the District sent a follow-up letter to ABC informing it that the District still had not received all of the requested information, alerting its current permit would expire on May 14, 2011, unless it completed its renewal application, and warning it could be subject to a cease and desist order and civil penalties if it continued operations without a permit.

¶5          On May 31, the District issued ABC a notice of violation/cease and desist order ("the notice"), explaining ABC had failed to provide all required information and was now operating without a permit.[3]  The notice explained the District was willing to work with ABC by issuing a short-term permit while it completed the renewal requirements, but warned if ABC continued to operate in violation of floodplain regulations it could be fined up to $10,000 per day pursuant to A.R.S. § 48-3615(C) (Supp. 2013).  The notice also informed ABC of its right to a hearing before a hearing officer.

¶6          At ABC's request, a hearing officer held a hearing on September 12 and 15, 2011.  During that hearing, ABC acknowledged it did not have any writing from the District recognizing its permit renewal. In October 2011, the hearing officer issued his recommendation, which included findings of fact and conclusions of law.  The hearing officer concluded ABC had been operating without a permit since May 2011, in violation of floodplain regulations, and recommended the District order ABC to cease operations until it obtained an approved permit, and impose a civil penalty for the time ABC had been operating unpermitted.

¶7          In November 2011, the District issued its final order adopting the hearing officer's recommendations.  In addition to concluding ABC was operating unlawfully, the District fined ABC $169,000, representing $1000 for each day ABC had been operating

---

[3] The notice suggested ABC's permit might have expired in 2006, and a database error resulted in the permit being recorded as valid through May 2011.  The notice stated regardless of this possible error, ABC was now operating without a permit.  Despite the District's initial position that ABC's permit might have expired in 2006, the District later acknowledged ABC was permitted until May 14, 2011.

unpermitted since the District issued its cease and desist order. Because of unresolved issues about ABC's compliance with permitting requirements, the order stated the $1000-per-day penalty would continue to accumulate until ABC resolved the violation and paid the fine in full.

**¶8** ABC appealed to the Board, which is charged with reviewing the District's final orders. A.R.S. §§ 48-3603(C)(25), -3615.01(G) (2006).[4] On March 28, 2012, the Board considered ABC's appeal. After hearing arguments from ABC and the District, the Board met in executive session and thereafter voted unanimously to deny the District's final order. The Board did not explain the factual or legal basis for its decision.

**¶9** On June 27, 2012, despite issues apparently[5] still remaining about ABC's compliance with permitting requirements, ABC sent a demand letter to the District asserting the District must recognize its permit through 2016 because ABC prevailed before the Board, and demanding the return of its $6400 payment. That same day, the Chairman of the Board issued a final written order summarily denying the District's decision.

**¶10** On July 31, 2012, the District filed a complaint with the Maricopa County Superior Court seeking judicial review of the Board's order pursuant to A.R.S. §§ 12-905(A) (2003) and 48-3615.02 (Supp. 2013). The District requested the superior court reverse the Board's decision and uphold the District's final order or, alternatively, remand the matter to the Board with instructions to explain its decision with findings of fact and conclusions of law. ABC moved to dismiss the District's complaint as

---

[4] We cite the version of the statute in effect at the time of the administrative proceedings in this case because the statute has since been materially amended. *See infra* ¶ 24, n.10, ¶ 31.

[5] We say apparently because it is unclear from the record whether ABC eventually supplied the District with all of the requested information. The minutes from the hearing before the Board suggest a dispute between ABC and the District about whether ABC had answered all of the District's concerns. ABC's demand letter acknowledges it was, at least at that time, still working toward resolving the District's concerns, which suggests some of the District's requests remained unanswered after the Board's hearing. Further, during oral argument before the superior court, the District asserted ABC failed to respond to all of the District's concerns, but the District issued a short-term permit while ABC worked out the technical problems in its renewal application.

untimely, arguing the District was required to appeal within thirty-five days of the Board's March 28 voice vote. The superior court denied ABC's motion without prejudice to it raising the timeliness issue on appeal.

¶11 The superior court issued an order vacating the Board's decision and remanding with instructions to issue a new decision including factual findings and conclusions of law. The superior court concluded it could not meaningfully review the Board's decision because the Board failed to explain the factual and legal basis for its vote. Thus, the superior court did not reach the merits of whether the Board's final decision was supported by substantial evidence. However, the superior court rejected ABC's argument that the District's lax enforcement of renewal procedures in the past estopped it from denying ABC's permit renewal.

¶12 ABC timely appealed the superior court's remand order.[6] We have jurisdiction pursuant to A.R.S. § 12-913 (2003).

## STANDARD OF REVIEW

¶13 Pursuant to A.R.S. § 48-3615.02, administrative agency appeal procedures apply to the Board's final decisions. When reviewing an agency's decision, the superior court determines whether the agency action was arbitrary, capricious, or an abuse of discretion. *Gaveck v. Ariz. St. Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 11, 215 P.3d 1114, 1117 (App. 2009). In so doing, the superior court "must defer to the agency's factual findings and affirm them if supported by substantial evidence," but is not bound by the agency's legal conclusions. *Id.* at ¶¶ 11-12. This Court engages in the same process when reviewing the superior court's ruling on an administrative decision. *Id.* at ¶ 12.

## DISCUSSION

¶14 ABC argues: (1) the District cannot appeal the Board's decision; (2) even if the District has a right to appeal, its appeal is untimely; (3) the superior court erred by remanding the matter because the Board was not required to make findings of fact and conclusions of

---

[6] The Board initially was included as a party to this appeal. The Board took no position on the merits but instead requested it be dismissed from this appeal because it served a quasi-judicial function in the administrative review process and was not an adversarial party. On April 25, 2014, we dismissed the Board from this appeal.

law; and (4) the District is estopped from denying the existence of ABC's permit because of its history of lax enforcement.[7]   For the following reasons, we affirm the remand order.

I.       Jurisdiction

¶15         ABC first argues the superior court lacked jurisdiction because the District does not have a right to appeal the Board's final decision and the appeal was untimely.

        A.       Right to Appeal

¶16         ABC contends the District is attempting, improperly, to appeal its own decision.   ABC's argument is based on the erroneous premise that the District and the Board are the same entity for purposes of administrative appeals.   The Board reviews final orders of the District. A.R.S. § 48-3615.01(G).   Although the District takes initial enforcement action, it is a party to the proceedings before the Board.[8]   The superior court reviews final decisions of the Board.   A.R.S. §§ 48-3615.02, 12-905(A).

¶17         ABC argues the relevant statutes only permit agencies to appear as appellees, and therefore the District is not authorized to seek judicial review.   *See* A.R.S. §§ 12-907 (Supp. 2013) ("Within twenty days after service of the notice of appeal, the *appellee agency* and all other appellees shall file a notice of appearance in response to the notice of appeal." (emphasis added)), -908(A) (Supp. 2013) (stating that the agency may appear before the superior court as an appellee).

¶18         Here, however, the District and ABC both were parties before the Board, whose decision is now the subject of judicial review under A.R.S. §§ 48-3615.02 and 12-905(A).   Contrary to ABC's assertions, the District is appealing the Board's decision, not its own.   The statutes do

---

[7] ABC also argues the Board's decision was not arbitrary, capricious, or an abuse of discretion, and the civil penalty was excessive.   We do not address these contentions because, without findings and conclusions of law from the Board, we cannot determine what the Board intended by its order.   As we discuss later in this decision, the superior court clearly did not rule on the merits of whether the Board's decision was arbitrary, capricious, or an abuse of discretion, and properly remanded the matter to the Board for appropriate findings and conclusions.

[8] Indeed, here both the District and ABC argued and were represented by counsel before the Board.

not limit appeals to only one party before the Board. Accordingly, the District's appeal is proper.[9]

B.      Timeliness

**¶19**      ABC next argues the District's appeal was untimely because it was filed more than thirty-five days after the Board's voice vote. A final administrative decision may be appealed within thirty-five days from the date a copy of the decision is served upon the affected parties. A.R.S. § 12-904(A) (Supp. 2013). An untimely appeal bars judicial review. A.R.S. § 12-902(B) (Supp. 2013).

**¶20**      The Board orally voted against the District on March 28, 2012. On June 27, 2012, the Board issued a written order memorializing its decision. The District sought judicial review of the Board's decision within thirty-five days of the June 27 order, but not within thirty-five days of the March 28 hearing.

**¶21**      ABC argues the thirty-five-day window for appeals began on March 28 because that was when the Board rendered its final decision. A decision is final if it "affects the legal rights, duties or privileges of persons and . . . terminates the proceeding before the administrative agency." A.R.S. § 12-901(2) (2003). ABC's argument, however, conflates the finality of the decision with when that final decision was served upon the affected parties.

**¶22**      By the plain language of A.R.S. § 12-904(A), the time for an appeal runs not from the date the final decision is rendered, but rather from the date a copy of the final decision is served upon the affected parties. Thus, assuming the Board's March 28 vote constituted its final

---

[9] We note the interface between the statutes creating the Board, independent of the District, to review the Chief Engineer's decision and the Administrative Review Act, is not exact. Normally, an administrative agency's decision is the final decision, which is then subject to judicial review if appealed by the party subject to agency regulation, but not by the agency itself. Here, however, both the District and ABC properly were parties before the Board, which could and did rule against the District, thereby allowing the District to bring an appeal. We leave it to the legislature to consider whether any amendments to the statutes are appropriate to clarify whether the Board should be considered the District for purposes of judicial review.

decision, this fact does not resolve the timeliness issue. Instead, we must look to when a copy of that final decision was served upon the affected parties.

**¶23** A final decision is considered served "when personally delivered or mailed by certified mail to the party affected . . . ." A.R.S. § 12-904(A). The inclusion of certified mail as a proper method of service shows the statute contemplates a written decision. The crux of ABC's argument is the language "personally delivered" means a final decision may be orally delivered. Noting neither A.R.S. § 12-901(2) nor A.R.S. § 48-3615.01 explicitly require the final decision to be served in writing, ABC asserts the Board's final decision was personally served on March 28 because all parties were present at the hearing and, therefore, received actual notice.

**¶24** We first note, since the proceedings before the Board, the legislature has amended the relevant statute to explicitly require a written decision. A.R.S. § 48-3615.01(H) (Supp. 2013) ("The board shall issue a written order of its decision . . . and shall submit its final written order on the matter to the chief engineer within thirty days after completion of the hearing."). ABC argues the amendment demonstrates the Board was not required to issue a written order prior to the amendment. ABC contends this is especially true considering other parts of the statute explicitly require a writing. *See* A.R.S. § 48-3515.01(E), (F) (requiring the hearing officer's findings to be in writing). Although there is a general presumption that a statutory amendment changes prior law, *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue*, 221 Ariz. 123, 126, ¶ 10, 211 P.3d 1, 4 (App. 2008), in "some circumstances, a newly enacted statute may clarify ambiguities in an earlier version," *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 209, ¶ 30, 972 P.2d 179, 193 (1999). *See also State v. Sweet*, 143 Ariz. 266, 271, 693 P.2d 921, 926 (1985) (explaining development of statute may be used to ascertain original intent and suggesting when an amendment modifies an ambiguous statute soon after its original enactment, such amendment may properly be construed as a clarification rather than a change).

**¶25** The legislature enacted A.R.S. § 48-3615.01 in 2006. 2006 Ariz. Sess. Laws, ch. 273, § 3 (2d Reg. Sess.). The original statute was ambiguous because it provided a right to appeal to the Board, but did not explain how the Board should conduct the review. The statute neither explicitly required nor precluded a written decision. As a result, a mere seven years later the legislature amended the statute to include specific instructions for the review process, including issuing a written order.

2013 Ariz. Sess. Laws., ch. 170, § 4 (1st Reg. Sess.). Unlike *San Carlos*, in which our supreme court refused to construe an amendment as a clarification rather than a change of law because it was passed nearly eighty years after the statute's original enactment, 193 Ariz. at 210, ¶ 31, 972 P.2d at 194, here the brief passage of time between the original enactment and the subsequent amendment is indicative of a clarification of law rather than a change. *See Sweet*, 143 Ariz. at 271, 693 P.2d at 926 (construing amendment as a clarification when original statute was ambiguous and amendment was added one year later). We, therefore, construe the 2013 amendment as clarifying a written order is required, especially considering the apparent confusion the original statute caused in this case.

¶26        Further, ABC cites no Arizona authority that a copy of a final administrative decision may be personally served through oral pronouncement, nor do we find any. Significantly, none of the Arizona cases ABC cites involve an appeal from an oral pronouncement. *See Bolser Enters., Inc., v. Ariz. Registrar of Contractors*, 213 Ariz. 110, 112, ¶¶ 10-11, 139 P.3d 1286, 1288 (App. 2006) (appeal from form letter); *Stapert v. Ariz. Bd. of Psychologist Exam'rs*, 210 Ariz. 177, 179, ¶ 3, 108 P.3d 956, 958 (App. 2005) (motion for reconsideration delivered to wrong address); *Guminski v. Ariz. St. Veterinary Med. Examining Bd.*, 201 Ariz. 180, 181-82, ¶¶ 3-6, 33 P.3d 514, 515-16 (App. 2001) (appeal from written notification of denial of motion for reconsideration); *Butterworth v. Wiley*, 123 Ariz. 419, 420-21, 600 P.2d 32, 33-34 (App. 1979) (appeal from denial of request for review). Although these cases suggest a written copy need not take a particular form to be considered a final decision, they do not stand for the proposition that an oral pronouncement satisfies the personal service requirement.

¶27        The sole case ABC cites involving an appeal from an oral pronouncement is from Connecticut. In *Commission on Human Rights and Opportunities v. Windsor Hall Rest Home*, 653 A.2d 181, 188 (Conn. 1995), the Connecticut Supreme Court held an oral decision of an agency's presiding officer constituted a final decision triggering the window for appeals. But unlike A.R.S. § 12-901(2), Connecticut's statute governing final, appealable agency orders explicitly permits oral decisions. *See* Conn. Gen. Stat. § 4-180(c) ("A final decision in a contested case shall be in writing or orally stated on the record . . . ."). Nor are we bound by Connecticut law.

¶28        In context, A.R.S. § 12-904(A) implies a written order. The statute reads "[a]n action to review a final administrative decision shall be

commenced by filing a notice of appeal within thirty-five days from the date when a *copy* of the decision sought to be reviewed is served upon the party affected." A.R.S. § 12-904(A) (emphasis added). A copy is a reproduction and implies something tangible, like a writing. *See* Merriam-Webster online dictionary, http://www.merriam-webster.com/dictionary/copy (last visited June 5, 2014). This interpretation comports with the legislature's subsequent clarification.

¶29 ABC alternatively argues the Board memorialized its final decision in a sufficient writing by recording written minutes of the hearing. We find this argument unconvincing. Even if the Board's written minutes constituted a written decision, there is no evidence the Board served ABC and the District with a copy of those minutes either personally or by certified mail. Again, ABC conflates the finality of the decision with when it was served upon the affected parties.

¶30 Accordingly, the thirty-five-day window for appeals began the day the Board served the parties with a written copy of its order, here June 27, 2012. The District appealed within thirty-five days from that date. Therefore, its appeal is timely.

II.    Findings of Fact and Conclusions of Law

¶31 The superior court did not decide the merits of the underlying dispute because it determined the lack of any findings of fact or conclusions of law prevented meaningful judicial review of the Board's order. Instead, the superior court remanded the matter to the Board with instructions to explain the factual and legal basis for its order. ABC argues the superior court erred by remanding the matter because the Board was not required to make findings of fact and conclusions of law under the then-existing statute.[10] We conclude it was within the superior court's discretion to remand the matter and the remand was proper.

¶32 Regardless of whether the Board was required by statute or regulation to make such findings and conclusions, the decision to remand for further development was within the superior court's discretion. Section 12-910(E) (Supp. 2013) permits the superior court to "affirm, reverse, modify or vacate and remand the agency action." To that end, the

[10] The legislature subsequently amended the statute to require written findings of fact and conclusions of law. A.R.S. § 48-3615.01(H) (Supp. 2013).

superior court is authorized to "[s]pecify questions or matters requiring further hearing or proceedings and give . . . proper instructions," and to remand for further development "when from the state of the record of the administrative agency or otherwise it appears that such action is just." A.R.S. § 12-911(A)(6)-(7) (Supp. 2013).

**¶33** The superior court acknowledged its role is to examine whether the agency action is arbitrary, capricious, or an abuse of discretion, and in so doing it must defer to the agency's factual findings if supported by substantial evidence. However, it concluded "[b]ecause the Board did not state any factual findings, this Court has no way of knowing whether substantial evidence supported the factual findings the Board may or may not have made." Thus, the superior court reasoned "for there to be meaningful review in this matter, the Board must state some reason or reasons for denying [the District's order]."

**¶34** We agree with the superior court for two reasons. First, "findings of administrative agencies must be explicit to enable the reviewing court to review the decision intelligently and to ascertain whether the facts as found afford a reasonable basis for the decision or be sufficiently definite and certain to permit of judicial interpretation." *Wammack v. Indus. Comm'n*, 83 Ariz. 321, 325, 320 P.2d 950, 953 (1958). Second, neither the superior court nor we have any knowledge about the legal bases for the Board's decision. ABC presented numerous legal theories to the Board and it would be impractical, if not impossible, for a court to divine what legal issues the Board decided and whether its conclusions were legally correct without any findings of fact or conclusions of law. For example, a court cannot ascertain from the Board's vote whether its decision was based on a determination ABC had properly renewed its permit, whether the District was somehow estopped from strictly enforcing the statutory permitting requirements, whether further conditions on ABC were improperly placed, or whether the civil penalty imposed was inappropriate or excessive. Although ABC contends the Board's decision means it has a valid permit, nothing in the Board's summary ruling indicates the factual or legal basis for its decision or the intended effect of its order. An abuse of discretion encompasses incorrect legal rulings or conclusions, *see Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27, 156 P.3d 1149, 1155 (App. 2007), but without a more detailed ruling neither we nor the superior court can meaningfully review the Board's legal conclusions *de novo*, as we do not know what, if any, legal conclusions it reached.

¶35 We note, too, that A.R.S. § 12-909(A) (Supp. 2013) requires the notice of appeal from a final agency order to "contain a statement of the findings and decision or part of the findings and decision sought to be reviewed." The lack of any explanation for the Board's decision prevents the District from identifying with any particularity the precise findings or parts of the decision to which it assigns error. Factual findings and conclusions of law clearly would facilitate judicial review, and we find no abuse of discretion in remanding the matter for such clarification.

III. Estoppel

¶36 Finally, ABC argues the District is estopped from denying its permit renewal because the District has a history of not strictly following the statutory permitting requirements or its own procedures. "The three elements of estoppel are: '(1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct.'" *Gorman v. Pima Cnty.*, 230 Ariz. 506, 510-11, ¶ 21, 287 P.3d 800, 804-05 (App. 2012) (quoting *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, ¶ 35, 959 P.2d 1256, 1267-68 (1998)). "When applied to a government actor, the actions relied upon must bear some considerable degree of formalism." *Id.* at 511, ¶ 21, 287 P.3d at 805 (internal quotation marks omitted). Unwritten agreements generally do not meet the requisite formalism, nor will casual acts or advice suffice. *Id.* Instead, "estoppel applies only to the authorized acts of government officials when necessary to prevent a serious injustice," and only when its application causes no detriment to the public interest. *Id.* (internal quotation marks omitted).

¶37 ABC contends the District had a well-established, casual protocol for renewing permits, with which it deviated from inconsistently in 2011 when it began to strictly enforce permit requirements and procedures. Further, ABC argues it relied on the District's lax permit enforcement when it tried to renew its permit by simply submitting its renewal fee, and such reliance was detrimental because it caused ABC to incur civil penalties and expend money attempting to comply with the renewal procedures. Essentially, ABC argues the District is precluded from enforcing its regulations because it failed to strictly do so in the past. We disagree.

¶38 Even if the District was more lenient in its permit renewal procedures in the past, the District notified ABC it would need to comply with the formal renewal procedures in advance of its permit expiration.

Further, the District corresponded with ABC on several occasions, reminding it of the renewal requirements and even issued short-term permits in an effort to work with ABC toward compliance.

¶39          The cases upon which ABC relies for its estoppel argument are inapposite.  In *Gorman*, Pima County issued a building permit and began soliciting construction bids for a bike park that appellants had agreed to finance with their personal funds.  230 Ariz. at 508, ¶¶ 5-6, 287 P.3d at 802.  Appellants sent the County a letter regarding a possible location for the park, to which the County responded favorably, suggesting general approval of appellants' plans.  *Id.* at ¶ 5.  Thereafter, the County notified appellants, by letter, that the project would not move forward because of problems with the location.  *Id.* at ¶ 7.  Appellants sued for breach of contract, *id.* at ¶ 8, and this Court concluded appellants presented a triable issue of whether the County was equitably estopped from denying liability,  *id.* at 512-13, ¶¶ 26-27, 287 P.3d at 806-07.  Here, on the other hand, the District never informed ABC it had validly renewed its permit.  Instead, the District on numerous occasions warned ABC it needed to supply additional information to complete the renewal.

¶40          In *Pingitore v. Town of Cave Creek*, 194 Ariz. 261, 262, ¶ 2, 981 P.2d 129, 130 (App. 1998), Cave Creek issued appellants a construction permit to build a driveway.  After appellants expended considerable sums to comply with zoning requirements, the town adopted a new ordinance, which it determined appellants' construction violated and ordered them to cease.  *Id.* at 263, ¶¶ 13, 16, 981 P.2d at 131.  We concluded the town was estopped from enforcing the new restrictions against appellants.  *Id.* at 266, ¶ 32, 981 P.2d at 134.  Here, however, the District did not issue ABC a renewed permit only to later declare it invalid, nor is there any record that ABC expended money in reliance on a then-existing permit or permit requirements.  Instead, the District consistently informed ABC it needed to supply additional information to complete its renewal application and the failure to do so would result in the expiration of its permit.

¶41          Finally, unlike *Freightways, Inc. v. Ariz. Corp. Comm'n*, 129 Ariz. 245, 248, 630 P.2d 541, 544 (1981), in which the Arizona Corporation Commission was estopped from denying the validity of a certificate of public convenience and necessity fifty years after its issuance because of a defect in the certificate, here the District was not refusing to recognize an existing mining permit.  Instead, the District was merely trying to enforce floodplain regulations for future permit renewals.  Furthermore, the *Freightways* decision was based heavily "on the long period of time that ha[d] elapsed between the defect in the issuance of the certificate and the

attempt by the Commission to cancel it." 129 Ariz. at 248, 630 P.2d at 544. Here, the District was not attempting to cancel an existing permit based on old defect, nor had ABC been permitted for fifty years.

¶42 Public policy considerations also weigh against estoppel here. It is unreasonable to suggest the District is precluded from enforcing its statutory and regulatory mandate going forward simply because it failed to strictly enforce those requirements in the past. Such preclusion would require the District to effectively nullify the law by failing to enforce it. Accordingly, we conclude the District is not estopped from enforcing floodplain regulations when renewing or issuing new permits.

## CONCLUSION

¶43 For the foregoing reasons, we affirm the superior court's remand order.



Ruth A. Willingham · Clerk of the Court
FILED: gsh